STEPHEN J. WINDHORST, Judge.
| ..¡Defendant, Terrance Napoleon, was found guilty of six felony counts: attempted armed robbery of Terry Scott while armed with a firearm, La. R.S. 14:(27)64 (Count One); one count of attempted second degree murder of Terry Scott, La. R.S. 14:(27)30.1 (Count Two); one count of possession of a firearm by a convicted felon,[1] La. R.S. 14:95.1 (Count Three); one count of aggravated burglary of a residence belonging to Louis and Aura Napoleon, La. R.S. 14:60 (Count Four); and two counts of second degree murder of Jazman Williams and Ulrich Fleming, Jr., La. R.S. 14:30.1 (Counts Five and Six). Defendant was sentenced to 49 years and 6 months imprisonment at hard labor on Count One; 50 years imprisonment at hard labor on Count Two; 20 years imprisonment at hard labor on Count Three; 30 years imprisonment at hard labor on Count Four; and life imprisonment on Counts Five and Six. The trial court further ordered defendant’s sentences to be served consecutively, and without benefit of parole, probation, or suspension of sentence.
In this appeal, defendant alleges that the district court erred in allowing the admission of other crimes evidence, that his constitutional rights were violated by |4the requirement of a less than unanimous jury verdict, and that his trial counsel was ineffective for failing to advance his right to a speedy trial.

FACTS

Evidence at trial proved that during a ten-hour period on April 5-6, 2007, defendant committed a string of crimes that included three murders. Two of these murders formed the basis for Counts Five and Six; evidence of the third murder was admitted as La. C.E. 404B evidence of other crimes.
Prior to the commission of the crimes, on February 26, 2007, Mark Brossette reported his black Ford Ranger stolen. He reported that he loaned the truck to a black male named “Birdie” who did not return it. “Birdie” was the defendant’s nickname.

Terry Scott, April 5, 2007:

At approximately 9:00 P.M., Terry Scott was shot with a shotgun by a man he later recognized as the defendant. Scott was leaving his house in Marrero when a black *241 two-door Ford Ranger truck pulled up and a man jumped out of the vehicle demanding money. Scott told his assailant that he did not have any money. His assailant then reached into his truck and pulled out a sawed-off shotgun, aimed it at Scott’s head, and asked him if he “was ready.” Knowing his life was in danger, Scott attempted to “wrestle” the shotgun away from the man when the gun went off and shot him in his hands. Scott was transported to University Hospital for treatment of his injuries. Scott testified that he recognized his assailant from around the neighborhood but did not know his name. While in the hospital, he was watching a television news broadcast about a separate matter which showed a picture of his assailant. When the police spoke with Scott in the hospital he identified defendant as his assailant from a photographic lineup.
| ^Gregory Singleton (Orleans Parish offense, subject of 404B “evidence of other crimes” hearing), April 6, 2007:
On April 6, 2007, at approximately 4:00 A.M., defendant knocked on the door of Gregory Singleton’s house, at 417 Whitney Avenue in Algiers, which is part of New Orleans. The knock was answered by Eva Miller, Singleton’s niece. At the door was a man she knew as “Birdie,” who was looking for her uncle. Defendant confronted Singleton looking for money, then shot Singleton in the chest. Defendant forced Miller outside, telling her that she was coming with him because she had “seen everything.” Miller was eventually able to escape when defendant turned his back to get into a black truck. Shotgun wadding and pellets recovered during the autopsy were consistent with the gun used in the Williams and Fleming murders.

Louis and Aura Napoleon, April 6, 2007:

In the early morning hours, Louis and Aura Napoleon were asleep in their apartment on Carol Sue Ave., Gretna, Louisiana. Defendant kicked in their front door, entered the bedroom and pointed a “long” gun at them. Mrs. Napoleon ran from the room and called 911, while Mr. Napoleon yelled “No, no,” calling the defendant “Birdie,” and attempted to wrestle the gun away from him. Defendant eventually took off running toward a black truck. Mr. Napoleon knew defendant, who was his cousin. Later, Mr. Napoleon received a call from defendant, who was screaming and who told him that defendant “was going to kill” Napoleon. At trial, Louis Napoleon stated that he grabbed the gun from defendant because he believed he was “going to die.”

Jazman Williams, April 6, 2007:

At approximately 7:11 A.M., Jazman Williams, a 14-year-old boy, was found dead, lying on the side of the road in the bushes off Highway 45 in Crown | (¡Point. He had sustained a gunshot wound to the back of his head and an injury to his hand. A shotgun shell was found under the victim’s foot. At the time of the murder, Juleau Williams, the victim’s sister, had dated defendant off and on for about five years. She confirmed that defendant was the last person seen with her brother on the night before his death. In investigating this murder, the officers believed that evidence belonging to defendant could be found in the apartment belonging to Rane-ka Williams, defendant’s niece and the victim’s cousin. Her apartment was searched and a .410 shotgun shell and a gun cleaning kit were seized. Shotgun wadding and shotgun fragments retrieved from the victim’s head confirmed that the victim had been shot with a .410 shotgun.
The shotgun used to commit the murder was later found inside the stolen Ford Ranger that defendant was using at the time of the murders. Both Raneka Williams and Juleau Williams stated that defendant had lived with them in the past, *242 and that they had seen a shotgun in the closet of the room where defendant slept.

Ulrich Fleming, April 6, 2007:

Around 6:00 A.M., Ulrich Fleming was found dead inside his vehicle, which appeared to have broken down on the side of Interstate-10 in Kenner, Louisiana. Fleming had suffered from a gunshot wound to the left side of his face. Wadding and pellets from a .410 shotgun recovered during Fleming’s autopsy proved to be consistent with the wadding and pellets found during Williams’ autopsy. A white T-shirt later found in the truck that defendant was using at the time of the murders, was found to contain both defendant’s and Fleming’s DNA.

Recovery of the Ford Ranger

In April of 2007, Mr. Brossette’s black Ford Ranger, which he had previously reported stolen, was recovered in Houston, Texas. Several bullet holes |7were located on the exterior of the vehicle and a shotgun was found lying on the floorboard. CDs found in the truck were dusted for fingerprints and one of the fingerprints was identified as that of defendant. A black sawed-off .410 shotgun, along with an empty box of .410 shotgun shells and three shotgun shells (one fired and two live) were found in the truck. The shotgun shell found under victim Williams’ foot was determined to have been fired from the .410 shotgun seized from the truck. Also found in the truck was a white T-shirt, which contained blood DNA of both defendant and Ulrich Fleming.

ASSIGNMENTS OF ERROR

In his first assignment of error, defendant alleges that it was error to admit evidence of the Gregory Singleton homicide in New Orleans, as that evidence was unduly prejudicial and far outweighs its potential probative value as to any issue in the charges at trial. Defendant maintains that the error in admitting this evidence was not harmless, warranting reversal and remand for a new trial.
Generally, a court may not admit evidence of other crimes to show a defendant is a man of bad character, and that he has acted in conformity with his bad character. State v. Brown, 03-1616 (La.App. 4 Cir. 3/31/04), 871 So.2d 1240, 1247, writ denied, 04-1285 (La.10/15/04), 883 So.2d 1044 (quoting State v. Taylor 01-1638 (La.1/14/03), 838 So.2d 729, 741, cert. denied, 540 U.S. 1103, 124 S.Ct. 1036, 157 L.Ed.2d 886 (2004)).
However, the State may introduce evidence of other crimes, wrongs or acts if it establishes an independent and relevant reason for its admissibility, such as to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. La. C.E. 404 B(l). The State must provide the defendant with notice and a hearing before trial if it intends to offer such evidence. State v. Prieur, 277 So.2d 126 (La.1973). Additionally, the State must prove that the defendant committed the other acts. Id.
While the Louisiana Code of Evidence prohibits the use of evidence of other crimes or wrongful acts to prove the character of a person in order to show that he acted in conformity therewith, such evidence is admissible “when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.” La. C.E. art. 404 B(1); State v. Brown, 95-124 (La.App. 5 Cir. 5/30/95), 656 So.2d 1070, 1074-75. Res gestae events constituting other crimes are deemed admissible because they are so nearly connected to the charged offense that the State could not accurately present its case without reference to them. Close proximity in time and location is required between the charged offense and the other *243 crimes evidence to insure that the purpose served by admission of other crimes evidence is not to depict defendant as a bad man, or that defendant acted in conformity with the other crime, but rather to complete the story of the crime for which he is on trial by proving its immediate context of happenings near in time and place. State v. Colomb, 98-2813 (La.10/1/99), 747 So.2d 1074, 1076 (quoting State v. Haarala, 398 So.2d 1093, 1098 (La.1981)). The res gestae doctrine in Louisiana is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed during or after the commission of the crime if a continuous chain of events is evident under the circumstances. State v. Leonard, 543 So.2d 975, 979 (La.App. 3 Cir.1989), citing State v. Kimble, 407 So.2d 693, 698 (La.1981). In addition, integral act (res gestae) evidence in Louisiana incorporates a rule of narrative completeness without which the State’s case would lose its narrative cohesiveness, “with power not only to support conclusions but to sustain the | nwillingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.” Colomb, 98-2813, 747 So.2d at 1076 (quoting Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)).
The defendant bears the burden to show that he was prejudiced by the admission of other crimes evidence. State v. Dauzart, 02-1187 (La.App. 5 Cir. 3/25/03), 844 So.2d 159, 165-66. Absent an abuse of discretion, a trial court’s ruling on the admissibility of evidence pursuant to La. C.E. 404B(1) will not be disturbed. State v. Merritt, 04-204 (La.App. 5 Cir. 6/29/04), 877 So.2d 1079, 1085, writ denied, 04-1849 (La.11/24/04), 888 So.2d 228.
In this case, defendant’s string of crimes commenced on April 5, 2007, at approximately 9:32 P.M., and ended at approximately 7:11 A.M. on April 6, 2007, when the body of Jazman Williams was discovered. The first crime occurred when defendant committed an armed robbery and attempted second degree murder of Terry Scott for money. Scott was shot with defendant’s sawed-off shotgun after he told defendant he did not have any money. The second incident occurred at the residence of Gregory Singleton when defendant entered the residence demanding money owed by Singleton. When Singleton stated that he had not received his paycheck, he shot and killed him. Singleton’s niece, Eva Miller, knew defendant and was able to provide a description to the police. Miller identified defendant, who was known by the nickname “Birdie,” from a photographic lineup and advised the police that Singleton had been shot by defendant with a sawed-off shotgun and had fled the scene in a black two-door Ford Ranger. Next, defendant went to his cousin’s home, where he broke down the door and pointed a sawed-off shotgun at Louis and Aura Napoleon, who were asleep in their bed. Before defendant could make his demands, Louis Napoleon wrestled with defendant in an attempt to secure the shotgun because he believed defendant was going to kill them. | ^Defendant fled in the same black Ford Ranger truck. The body of Ulrich Fleming was later found inside a vehicle parked off the interstate. It was determined that Fleming had been killed by a .410 shotgun. Fleming’s blood and defendant’s DNA were later found on a T-shirt inside the stolen black Ford Ranger that had been abandoned in Texas. Jazman Williams’ body was also found on the side of the road on Highway 45 in Crown Point with a gunshot wound to the back of the head. It was later discovered that Williams had *244 also been shot at close range by a .410 gauge shotgun. The shotgun shell recovered under Williams’ foot matched the shotgun shell found in the black Ford Ranger. Williams’ sister and cousin both testified that defendant had lived with them prior to these incidents and that they had seen a black shotgun with duct tape on the handle in the closet of the room where defendant slept. They further confirmed that defendant was driving a black Ford Ranger at the time.
The Louisiana Supreme Court has recognized that it is proper to admit proof of similar but disconnected crimes to show the intent with which the act charged was committed, where the element of intent is an essential ingredient of the charged offense. State v. McArthur, 97-2918 (La.10/20/98), 719 So.2d 1037, 1040 (citations omitted).[2] The pattern/plan exception requires a determination that a defendant achieved an ultimate goal through a series of related crimes. Id. at 1042. The Louisiana Supreme Court has held other crimes evidence admissible as proof of other crimes exhibiting almost identical mo-dus operandi, or system, committed in close proximity in time and place. State v. Williams, 96-1023 (La.1/21/98), 708 So.2d 703, 725, cert. denied, 525 U.S. 838, 119 S.Ct. 99, 142 L.Ed.2d 79 (1998).
| nDefendant herein engaged in a continuous chain of criminal activity that spanned a period of ten hours. As a general rule, evidence of criminal conduct that takes place in a series of events is admissible at the trial of one of the offenses. See, La. C.E. 404(B). See also, State v. Morris, 99-3075 (La.App. 1 Cir. 11/3/00), 770 So.2d 908, 914, writ denied, 00-3293 (La.10/12/01), 799 So.2d 496, cert. denied, 535 U.S. 934, 122 S.Ct. 1311, 152 L.Ed.2d 220 (2002).
Furthermore, the crimes committed by defendant were all committed with the same weapon, same vehicle, by a black male, known by the nickname “Birdie,” with an apparent financially motivated purpose. All of the autopsies performed in this case indicated that the victims were shot at close range with a .410 gauge shotgun. Notably, Dr. Karen Ross, who performed the autopsies on Williams and Fleming, notified investigators when she discovered the similarities in the death of the victims who had been shot with the use of a .410 gauge shotgun. Additionally, Detective McGregor, an 18-year veteran police officer, testified that these were the first murders with a shotgun he had seen, thus giving evidence of a “system” which was somewhat unique, at least from his perspective. This pattern alerted law enforcement officials to conduct overlapping investigations in different jurisdictions to develop defendant as a suspect to the multiple crimes committed in this case.
At trial, the State used the evidence of the Singleton murder to show that the person responsible for Singleton’s death had possession of the weapon on the day the other homicides were committed. It was further used to establish a motive and the identity of defendant. Specifically, the Singleton murder further evidenced defendant’s need for money by targeting individuals with whom he was acquainted. The evidence also aided in establishing defendant’s intent to kill [ i2Jazman Williams and Ulrich Fleming, and his criminal intent to commit an offense within Louis and Aura Napoleon’s residence.
In sum, the introduction of the Orleans Parish murder of Singleton and the fact *245 that the crimes committed in this case all involved the same weapon and the same vehicle, were relevant to prove defendant’s identity, motive, system, and intent. Whoever killed Singleton had the weapon in his possession and had an ongoing financial motive for killing again to achieve his goal. Lastly, the trial court instructed the jury on the limited purpose for which they could consider evidence of the homicide committed in New Orleans. Accordingly, we find that the trial court did not abuse its discretion in allowing the State to introduce evidence of Singleton’s murder.
In his second assignment of error, defendant challenges the constitutionality of La.C.Cr.P. art. 782(A), which allows for non-unanimous jury verdicts. In particular, he argues that the jury verdicts in this case should be declared invalid because non-unanimous verdicts violate the Sixth and Fourteenth Amendments of the United States Constitution.[3]
The record reflects that the verdicts rendered in this case were declared legal by the trial court; however, it does not establish whether the verdicts were rendered by a non-unanimous jury. Thus, we cannot ascertain whether defendant has standing to challenge the constitutionality of La.C.Cr.P. art. 782(A) because it is unknown whether he was convicted by non-unanimous jury verdicts on all counts.[4]
| iSThe record also reflects that defendant failed to file a motion to declare unconstitutional the non-unanimous jury verdict portions of either La. Const, art. 1, § 17(A) or La.C.Cr.P. art. 782(A). Further and significantly, the defendant did not object to the jurors being instructed that ten of twelve of them must concur to render any verdict (including acquittal, or guilty of a lessor offense), per La.C.Cr.P. art. 782(A). Nor did defense counsel object to the verdict after it was rendered.
While there is no single procedure for attacking the constitutionality of a statute, the unconstitutionality of a statute must be specially pleaded and the grounds for the claim particularized. State v. Hatton, 07-2377 (La.7/1/08), 985 So.2d 709, 719-20. Also, La.C.Cr.P. art. 841 provides that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence. In order to seek appellate review of an alleged trial court error, a party must make a contemporaneous objection at trial, and he must state the grounds for the objection. La.C.Cr.P. art. 841; State v. Gaal, 01-376 (La.App. 5 Cir. 10/17/01), 800 So.2d 938, 949, writ denied, 02-2335 (La.10/3/03), 855 So.2d 294. Because defendant failed to raise this alleged error at trial, he is not entitled to have this issue reviewed and *246 considered by this Court. La.C.Cr.P. art. 841(A). See also State v. Brooks, 12-226 (La.App. 5 Cir. 10/30/12), 103 So.3d 608.
Even if we were to find that this issue is properly before us on appellate review, the Louisiana Supreme Court has long held that non-unanimous jury verdicts for twelve-person juries are not unconstitutional in non-capital cases. State v. Edwards, 420 So.2d 663, 674 (La.1982).
Defendant’s contention is that the United States Supreme Court decision in Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), holding | uthat non-unanimous jury verdicts do not violate the defendant’s constitutional rights, has been called into question by Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and therefore should no longer be followed by this court. However, the defendant herein relies on the mention of unanimity in Apprendi, in which non-unanimous verdicts were not at issue. Apprendi involved reversal of the enhancement of a defendant’s sentence upon the trial judge’s post-verdict, factual finding that the crime committed was a hate crime, with such finding made by a mere preponderance of evidence. The un-eonstitutionality found by the Apprendi Court was criminal punishment for a post-trial finding of guilt of an additional element which had not been submitted to the jury, nor which required proof beyond a reasonable doubt. A superfluous mention of required unanimity made in the Court’s holding that all elements of a crime for which the defendant is punished must necessarily be proven to the jury beyond a reasonable doubt is not surprising, especially in a state (New Jersey) whose constitution requires a unanimous verdict. It cannot be construed to mean or predict that Apodaca is, or might soon be, overturned.
In State v. Bertrand, 08-2215 (La.3/17/09), 6 So.3d 738, the Louisiana Supreme Court held non-unanimous jury verdicts were not unconstitutional, due to its prior holdings that La.C.Cr.P. art. 782 “withstands constitutional scrutiny,” and because it refused to assume that the United States Supreme Court’s “still valid determination that non-unanimous 12-person jury verdicts are still constitutional may someday be overturned.” Relying on Bertrand, the Fourth Circuit upheld the constitutionality of non-unanimous jury verdicts in State v. Barbour, 09-1258 (La.App. 4 Cir. 3/24/10), 35 So.3d 1142, writ denied, 10-934 (La.11/19/10), 49 So.3d 396, cert. denied, — U.S. -, 131 S.Ct. 1477, 179 L.Ed.2d 302 (2011). The | ^United States Supreme Court recently denied certiorari in Barbour, thereby declining to address the issue of non-unanimous jury verdicts.
Therefore, the contention that recent post-Apodaca. jurisprudence establishes a right to unanimous jury verdicts in all criminal cases is without merit.[5] Accordingly, we find no merit to defendant’s assertion that the trial court erred in charging the jury that a verdict of at least ten of twelve jurors was sufficient to reach any verdict.
Defendant also filed a pro se assignment of error, in which he argues that his trial counsel was ineffective for failing to advance his right to a speedy trial under La.C.Cr.P. art. 701.
Generally, a claim of ineffective assistance of counsel is most appropriately ad *247 dressed through an application for post-conviction relief rather than on direct appeal, so as to afford the parties an adequate record for review. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by an assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Grimes, 09-2 (La.App. 5 Cir. 5/26/09), 16 So.3d 418, 426, writ denied, 09-1517 (La.3/12/10), 28 So.3d 1023. Here, the record contains sufficient evidence to rule on the merits of defendant’s claim.
A criminal defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article 1, § 13 of the Louisiana Constitution. Grimes, 16 So.3d at 425. To prove ineffective assistance of counsel, a defendant must show both that (1) his attorney’s performance was deficient, and (2) the deficiency prejudiced him. Id.; Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). It is unnecessary 11fito address the issues of both counsel’s performance and prejudice to the defendant if the defendant makes an inadequate showing on one of the two necessary elements. State v. Serigny, 610 So.2d 857, 860 (La.App. 1 Cir.1992), writ denied, 614 So.2d 1263 (La.1993).
To establish the deficiency prong of the test, the defendant must show that counsel made errors so serious that he was not functioning as the “counsel” guaranteed by the Constitution. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. To establish prejudice, the defendant must show that the errors were so serious that the defendant was deprived of a fair trial, the result of which is reliable. The defendant must prove actual prejudice before relief will be granted. Serigny, 610 So.2d at 860. It is not sufficient for the defendant to show that the error had some conceivable effect on the outcome of the proceeding. Id. Rather, he must show that but for counsel’s deficient performance, there is a reasonable probability the outcome of the trial would have been different. State v. Robinson, 01-1305 (La.App. 4 Cir. 4/17/02), 820 So.2d 571, 582, writ denied, 02-1640 (La.5/30/03), 845 So.2d 1068.
Defendant asserts an ineffective assistance of counsel claim predicated upon an alleged post-indictment delay as surmised from defendant’s general reference to the 14 continuances filed by his trial counsel. Defendant contends that his counsel filed more than 14 continuances for no stated reason and failed to litigate an alleged violation of the speedy trial act. Defendant’s brief contains no argument as to how his counsel’s continuances caused a violation of the speedy trial act or how he was prejudiced by his counsel’s performance. Assignments of error that are neither briefed nor argued are considered abandoned on appeal. See Uniform Rules Courts of Appeal, Rule 2-12.4; State v. Blank, 01-564 (La.App. 5 Cir. 11/27/01), 804 So.2d 132, 139.
| ^Defendant’s argument that counsel was ineffective has no merit. There are two separate and distinct bases for a defendant’s right to a speedy trial: the statutory right granted by La.C.Cr.P. art. 701, and the constitutional right embodied in the Sixth Amendment to the United States Constitution and in Article 1, Section 16 of the Louisiana Constitution. The two are not equivalent. State v. Cowger, 581 So.2d 283, 285 (La.App. 5 Cir.1991). A statutory speedy trial claim under La. C.Cr.P. art. 701 becomes moot after conviction because the remedy for such a violation is pre-trial release of defendant, not a bar to prosecution. State v. Johnson, 08-1156 (La.App. 5 Cir.1991), 9 So.3d 1084, 1091, writ denied, 09-1394 (La.2/26/10), 28 *248 So.3d 268, (citing Cowger, 581 So.2d at 286).
The constitutional right to a speedy trial attaches when an individual becomes an accused, either by formal indictment or bill of information, or by arrest and actual restraint. State v. Pleasant, 489 So.2d 1005, 1009 (La.App. 1 Cir.1986), writ denied, 493 So.2d 1218 (La.1986). Claims for speedy trial violations are evaluated under the four-factor test set forth in Barker v. Wingo, 407 U.S. 514, 530-531, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). The considerations in determining whether a defendant has been deprived of a speedy trial are: (1) the length of the delay, (2) the reasons for the delay, (3) defendant’s assertion of his rights, and (4) the actual prejudice to the defendant. The initial inquiry is into the length of the delay. If the delay is presumptively prejudicial, there will be an inquiry into the other factors. Id. The peculiar circumstances of the case will determine the weight to be ascribed to the length of the delay and the reason for the delay. State v. Cowger, 581 So.2d at 286; State v. Reaves, 376 So.2d 136, 138 (La.1979); See also Doggett v. United States, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). Something that is acceptable in one case, may not be acceptable in another because the complexity of the case must be considered. Gray v. King, 724 F.2d 1199, 1202 (5th Cir.1984) (citing Barker, 407 U.S. at 531, 92 S.Ct. 2182). The manner of proof must also be considered, as must the gravity of the alleged crime. Id.
The record reflects that this case involves six counts of very serious crimes, among which include two counts of second degree murder, five different victims, multiple witnesses from various states, multi-pie crime scenes, DNA issues, and a complex factual chronology of events linking the various crimes, which spanned over two days, to defendant. Continuances were granted after requests from both the State and defense counsel, largely due to pending DNA testing results. The record appears to support these continuances, and despite the complexity and seriousness of these offenses, trial commenced approximately 20 months after indictment. At the time defendant was awaiting trial in Jefferson Parish, he was also awaiting trial in Orleans Parish for unrelated charges of second degree murder and aggravated rape. Moreover, defendant makes no argument as to how he was prejudiced by his counsel’s failure to “object or litigate” what he considers a deprivation of his right to a speedy trial. Under these circumstances, defense counsel was not ineffective, nor did any prejudice to defendant result from counsel’s failure to argue an alleged speedy trial violation. We find no merit to defendant’s pro se assignment of error.

Patent Error Review

We have reviewed the record for errors patent, according to La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and find the following errors in defendant’s sentences which merit consideration.
[,<)As to Count Three, Felon in Possession of a Firearm, defendant’s sentence is illegally excessive. At the time of the offense,[6] La. R.S. 14:95.1 included a penalty of imprisonment at hard labor “for not less than ten nor more than fifteen years without the benefit or parole, probation, or suspension of sentence” and a fine of “not *249 less than one thousand dollars nor more than five thousand dollars.”[7] Defendant was sentenced to 20 years at hard labor without benefit of parole, probation, or suspension of sentence.[8] Thus, defendant was sentenced to five years more than the term allowed by law. Because the corrected sentence remains within the trial court’s sentencing discretion, correction must be by remand for resentencing, rather than by an amendment by this court. State v. Barbay, 07-1976 (La.App. 1 Cir. 3/26/08), 985 So.2d 749, 752, citing State v. Haynes, 04-1893 (La.12/10/04), 889 So.2d 224 (per curiam). Accordingly, we must vacate this illegal sentence and remand to the trial court with instructions to resen-tence defendant in accordance with the sentencing provision of La. R.S. 14:95.1 at the time of the offense. See State v. Chairs, 12-363 (La.App. 5 Cir. 12/27/12), 106 So.3d 1232; State v. Mason, 10-284 (La.App. 5 Cir. 1/11/11), 59 So.3d 419, 430, writ denied, 11-0306 (La.6/24/11), 64 So.3d 216.
We also find clerical errors contained in the commitment. As it pertains to Count Three, the commitment is inconsistent with the transcript regarding the crime for which defendant was convicted. The transcript shows that defendant was convicted of possession of a firearm by a person previously convicted of certain felonies pursuant to La. R.S. 14:95.1. The commitment, however, indicates that |20on Count Three, defendant was found guilty of the lesser charge of 14:95B(2). This statutory citation and the statement that defendant was convicted of a lesser charge are incorrect, and the commitment must be corrected.
In addition, the date on the commitment reflects a sentencing date of March 8, 2012; however, the transcript from the sentencing proceeding and the motion for appeal reflects that sentencing in this matter took place on February 16, 2012.
Where there is a discrepancy between the transcript and the minute entry, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). We therefore order the trial court to correct the commitment reflecting these changes and order the Clerk of Court to transmit the corrected commitment to the officer in charge of the institution to which defendant has been sentenced and to the Louisiana Department of Corrections Legal Department. See La.C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam).
A second sentencing error is present on Count Four, aggravated burglary. On all counts, the trial judge stated that each sentence is to be served without the benefit of probation, parole or suspension of sentence. The sentence on Count Four is illegal because La. R.S. 14:60 does not permit the trial judge to impose the sentence without benefit of parole, probation, or suspension of sentence. Therefore, we amend the Count Four sentence to delete the restriction of benefits and order the trial court to correct the commitment accordingly on this error also. State v. Lipton, 02-162 (La.App. 5 Cir. 9/30/03), 857 So.2d 1162, 1167, writ denied, 03-3058 (La.2/20/04), 866 So.2d 818.

CONCLUSION

For the above discussed reasons, the defendant’s convictions on Counts One through Six are affirmed. The defendant’s *250 sentences on Counts One, Two, Five and Six are also affirmed. The defendant’s sentence on Count Four is amended, 121 and as amended, affirmed. The defendant’s sentence on Count Three is vacated. This matter is remanded for resentencing on Count Three, and for the aforesaid corrections of the commitment, and for transmittal of the corrected commitment to the correctional facility.
CONVICTIONS AFFIRMED. SENTENCES ON COUNTS ONE, TWO, FIVE AND SIX AFFIRMED. SENTENCE ON COUNT FOUR AMENDED, AND AS AMENDED, AFFIRMED. SENTENCE ON COUNT THREE VACATED. CASE REMANDED.

. The predicate offense in relation to this charge as referenced in the bill of indictment indicates that defendant was previously convicted of possession of cocaine, La. R.S. 40:967(C), in docket number 03-0790 in Division D of the 24th Judicial District Court, Parish of Jefferson.

. McArthur is superseded by La. C.E. 412.2 only with respect to other crimes evidence of sexually assaultive behavior. See State v. Nguyen, 04-321 (La.App. 5 Cir. 9/28/04), 888 So.2d 900, 907 n. 6, writ denied, 05-0220 (La.4/29/05), 901 So.2d 1064.

. La.C.Cr.P. art. 782(A) provides, in pertinent part, that "[cjases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict.” This article is a counterpart to La. Const, art. 1, § 17(A), which provides: "A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict.”

. In State v. Jacobs, 07-887 (La.App. 5 Cir. 5/24/11), 67 So.3d 535, 545-46, writ denied, 11-1753 (La.2/12/12), 80 So.3d 468, cert. denied, - U.S. -, 133 S.Ct. 139, 184 L.Ed.2d 67 (2012), defendant was convicted of two counts of second degree murder under La. R.S. 14:30.1 by a unanimous twelve-person jury verdict. This Court found that the defendant did not have standing to challenge the constitutionality of La.C.Cr.P. art. 782(A) because he was convicted by a unanimous jury verdict on both counts. Jacobs, 07-887, 67 So.3d at 535 (citing Burch v. Louisiana, 441 U.S. 130, 132 n. 4, 99 S.Ct. 1623, 1624, 60 L.Ed.2d 96 (1979)).

. See State v. Carter, 10-973 (La.App. 5 Cir. 8/30/11), 75 So.3d 1, writ denied, 11-2060 (La.2/10/12), 80 So.3d 469; State v. Smith, 09-100 (La.App. 5 Cir. 8/25/09), 20 So.3d 501, 508, writ denied, 09-2102 (La.4/5/10), 31 So.3d 357; and State v. Barbour, 09-1258 (La.App. 4 Cir. 3/24/10), 35 So.3d 1142, writ denied, 10-934 (La.11/19/10), 49 So.3d 396, cert. denied, — U.S. -, 131 S.Ct. 1477, 179 L.Ed.2d 302 (2011).

. The law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer. State v. Sugasti, 01-3407 (La.6/21/02), 820 So.2d 518, 520.

. Acts 2010, No. 815, § 1 amended the statute to provide for a maximum sentence of 20 years. That amendment took effect on August 15, 2010.

. In addition, neither the commitment nor the transcript reflects the imposition of the mandatory fine required under the statute.