**<u>NOT FOR PUBLICATION</u>**

**16-20**


**STATE OF LOUISIANA**

**VERSUS**

**DAVID WAYNE SIMS**


**\*\*\*\*\*\*\*\*\***
**APPEAL FROM THE**
**FOURTEENTH JUDICIAL DISTRICT COURT**
**PARISH OF CALCASIEU, DOCKET NO. 26735-13**
**HONORABLE G. MICHAEL CANADAY, PRESIDING**
**\*\*\*\*\*\*\*\*\***


**SYLVIA R. COOKS**
**JUDGE**


**\*\*\*\*\*\*\*\*\***


Court composed of Sylvia R. Cooks, John D. Saunders, and Marc T. Amy, Judges.

**AFFIRMED.**


John F. DeRosier, District Attorney
Carla S. Sigler, Assistant District Attorney
Karen C. McLellan, Assistant District Attorney
901 Lakeshore Drive, Suite 800
Lake Charles, LA  70601
(337) 437-3400
**ATTORNEY FOR APPELLEE**
    State of Louisiana

Edward J. Marquet
P.O. Box 53733
Lafayette, LA  70505-3733
(337) 237-6841
**ATTORNEY FOR DEFENDANT/APPELLANT**
    David Wayne Sims

**COOKS, Judge.**

Defendant, David Wayne Sims, is the biological father of A.C. and the step-father of D.C.[1]  It was alleged by D.C., whose date of birth was June 8, 2000, that Defendant had sexual intercourse with her for a three-year period beginning in 2009.  It was also alleged by A.C., whose date of birth was August 19, 2004, that between the dates of January 2011 and September 2012, Defendant fondled her genitals.

On December 12, 2013, Defendant was indicted by a grand jury for aggravated rape, a violation of La.R.S. 14:42, and sexual battery, a violation of La.R.S. 14:43.1.[2]  A jury trial commenced on April 27, 2015.  On May 1, 2015, the jury found Defendant guilty as charged on both offenses.

On May 27, 2015, Defendant was sentenced to life imprisonment without the benefit of parole, probation, or suspension of sentence for the offense of aggravated rape, and fifty years at hard labor without the benefit of parole, probation, or suspension of sentence for the offense of sexual battery.  The sentences were ordered to be served consecutively.  Defendant filed a "Motion for Reconsideration of Sentence," alleging the sentences were excessive.  The motion was denied without a hearing.

Defendant has perfected a timely appeal, wherein he alleges the evidence was insufficient to sustain the verdicts of aggravated rape and sexual battery and a non-unanimous jury verdict in the case of the aggravated rape conviction violated his Fifth, Sixth, and Fourteenth Amendment rights.  Finding no merit to either assignment of error, we affirm Defendant's convictions and sentences.

---

[1]The initials of the victims in this case are used to protect their identities as required by La.R.S. 46:1844(W).

[2]Aggravated rape is now referred to as first degree rape, effective August 1, 2015. Acts 2015, No. 184, § 1.

2

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find the record fails to indicate the trial court advised Defendant of the prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8. Thus, the trial court is directed to inform Defendant of the provisions of article 930.8 by sending appropriate written notice to him within ten days of the rendition of the opinion and to file written proof in the record that Defendant received the notice. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

**ANALYSIS**

### I.    *Sufficiency of the Evidence.*

Defendant argues the State failed to establish all the elements of the offenses of aggravated rape and sexual battery. He argues the victims' statements, given to an advocacy interviewer of children that allege sexual abuse, were vague and non-specific and were not supported by any of the physical evidence.

Regarding sufficiency claims, this court stated in *State v. Freeman*, 01-997, pp. 2-3 (La.App. 3 Cir. 12/12/01), 801 So.2d 578, 580:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King,* 436 So.2d 559 (La.1983); *State v. Duncan,* 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibilities of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *Graffagnino,* 436 So.2d at 563, *citing State v. Richardson,* 425 So.2d 1228 (La.1983). To obtain a conviction, the elements of the crime must be proven beyond a reasonable doubt.

Louisiana jurisprudence has consistently held that the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even if there is no physical evidence. *State v. Schexnaider,* 03-144 (La.App. 3 Cir. 6/14/03), 852 So.2d 450; *State v. Hotoph*, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, *writ denied*, 99-3477 (La. 6/30/00), 765 So.2d 1062, *and writ denied,* 00-150 (La. 6/30/00), 765 So.2d 1066. Furthermore, "[I]n the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the finder of fact, is sufficient support for a requisite factual conclusion." *State v. Robinson,* 02-1869, p. 16 (La. 4/14/04), 874 So.2d 66, 79, *cert. denied*, 543 U.S. 1023, 125 S.Ct. 658 (2004) (citing *State v. White*, 28,095 (La.App. 2d Cir. 5/8/96), 674 So.2d 1018, *writ denied,* 96-1459 (La. 11/15/96), 682 So.2d 760, *and writ denied,* 98-282 (La. 6/26/98), 719 So.2d 1048.)

At the time of the offense, aggravated rape was defined by La.R.S. 14:42, in pertinent part, as follows:

> A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> . . . .
>
> (4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.

Sexual battery is defined as "the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender . . . without the consent of the victim." La.R.S. 14:43.1(A)(1).

Joe Savoie, a detective with the Lake Charles Police Department, testified he was contacted on September 6, 2012, regarding an allegation of sexual abuse of two children. He met with the victims and their mother. D.C. was twelve years old and A.C was eight years old at the time. He set up appointments with the

4

Department of Children and Family Services for the two victims to be interviewed by a children's advocacy interviewer. The interview took place on September 11, 2012. Detective Savoie stated he waited until after the children were interviewed before he sought out Defendant to question him regarding the allegations. Detective Savoie watched the interviews via closed-circuit television, and testified that what the children told the interviewer was consistent with what they had told him when he spoke with them and their mother. He stated even though D. C. could not give specific dates, she gave a very detailed description of the sexual acts and of the locations in the apartments where the acts occurred. The sexual acts first started when she was about nine years old in the upstairs of an apartment that was shortly thereafter condemned. When they moved to the new apartment, the acts mainly took place in the kitchen or in the hallway. Detective Savoie checked with the housing authority and verified the dates when the old apartment complex was condemned and the family moved into the new complex. The dates coincided with the time frame the victim indicated.

Testimony established that during this time period, Defendant had been incarcerated in the parish jail from July 2012 to September 2012. After he was released, he did not return to the victims' household.

On September 19, 2012, the children were taken to a health facility, had pelvic examinations, and were tested for sexually transmitted diseases.

On October 3, 2012, Defendant reported to the police department, complaining that the children's mother was tattooing them. At that time, Detective Savoie advised Defendant of the allegations and conducted a brief interview, wherein Defendant denied the allegations.

On October 16, 2012, it was reported that D.C. was infected with herpes simplex 2 virus. A.C. was not infected. Detective Savoie testified he sought out Defendant in order to get blood work to test for herpes, but Defendant had

5

disappeared. A year later, in October 2013, Detective Savoie was informed that Defendant was then in the Calcasieu Parish Jail. Defendant was transported to the police department and interviewed by Detective Savoie again. A search warrant was obtained to have Defendant tested for herpes. It was thereafter determined that Defendant was infected with herpes simplex 2 virus.

David Duplechian, with the Family and Youth Counseling Agency, was the advocate that interviewed the two victims. D. C. was twelve years old at the time of the interview. When asked if she knew why she was being interviewed, the victim said it was because her dad made her do stuff that was not supposed to be done. She described how, when she was nine years old, before the first apartment was condemned, he made her put her mouth on his "wrong spot." After they moved to the new apartment, he put his "wrong spot" in her "wrong spot." When asked if she could say what her "wrong spot" was, she said "vagina." When asked what he was doing, she said she heard her mother use the words "sexual intercourse." She described how he pulled her head to his penis or how he bent her over a table and entered her from behind. Before they moved to the new apartment, it usually happened upstairs in her bedroom, but after they moved, the sexual activity generally happened in the kitchen or hallway, sometimes when her mother was home upstairs or at work. She described the white stuff that came out of his penis. She spoke of a Mexican blanket that he would put on the floor. Sometimes he got on top of her or he would make her sit on top of him. She said that he told her not to tell anyone because if she did, he would go to jail for a long time.

A.C., who was nine at the time of the interview, stated that her father only touched her. She said that he rubbed her "wrong spot" over her clothing. She did not report any further sexual activity. However, she did indicate that she was aware something was happening to her sister at times when her father would tell

6

her to go upstairs. She said she never saw anything, but would hear him yell words she was not supposed to say. When prompted to say the words, she muttered f--k, b---h, and n----r. Both interviews were published to the jury.

The children's mother, who had since married Kevin Smith, testified she was not aware of any sexual abuse between Defendant and the victims. She stated she found out when Defendant was serving a jail sentence for unpaid traffic tickets. After Defendant got out of jail, he saw D.C. and Mr. Smith together in a store. Defendant yelled at D.C. that he knew she told on him. Later, Mr. Smith mentioned to D.C.'s mother that there was "something up" between Defendant and D.C. Mrs. Smith asked D.C. about anything that may have happened between her and Defendant. Mrs. Smith said the victim cried for a long time, then told her of the sexual abuse. Mrs. Smith testified that she did not have herpes. She said she knew because she was HIV positive and had blood work done every six months.

Defendant testified, and he denied the allegations. Defendant speculated the victim contracted herpes when her mother tattooed her with a homemade tattooing device. He further speculated that the reason the girls made the allegations of sexual abuse was because he had refused to allow their mother to sell their food stamps to various relatives so she could play bingo.

In brief, Defendant points out that after the two girls were examined, the medical records stated in the reports: "'external genitalia, normal; no lesions or discharge; vagina-clear discharge'." Regarding A.C.'s statements, Defendant incorrectly argues:

> It simply defies all reason and logic that an adult male, intent upon repeatedly sexually abusing a child by placing his hand in her vagina day after day, week after week, month after month from January 1, 2011 through September 6, 2012, would leave no trace of injury in such a delicate area . . . . If one were to believe the vague memory of A.C., how could one not reasonably expect to find vaginal or genitalia injury?

7

The record establishes A.C. stated during her interview that her father rubbed her vaginal area through her clothing and then only a few times. Defendant argues the same regarding D.C.'s physical examination without taking into consideration he was in jail from July 2012 to September 2012 and had no contact with the victim afterwards. The examinations took place two and a half months later. The jury was presented with the two girls' statements made to the advocacy interviewer. Defendant had sexual intercourse with his older daughter from the time she was nine years old until she was twelve years old. He rubbed his younger daughter's genitals. They heard the mother's testimony and Defendant's testimony. The physical evidence established that both D.C. and Defendant were infected with herpes simplex 2 virus. Furthermore, Defendant failed to establish internal contradictions or inconsistencies in the two victims' statements or with the physical evidence. We find the evidence was sufficient to establish all the elements of aggravated rape and sexual battery.

As noted above, a witness's testimony alone can be sufficient to support a requisite factual conclusion. *Robinson,* 874 So.2d 66. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not re-weigh the evidence to overturn a fact finder's determination of guilt. *State v. Huey,* 13-1227 (La.App. 1 Cir. 2/18/14), 142 So.3d 27, *writ denied*, 14-535 (La. 10/3/14), 149 So.3d 795, *cert. denied*, ___ U.S. ___, 135 S.Ct. 1507 (2015).

## II. *Unanimous Verdict.*

In his second assignment of error, Defendant argues his Sixth Amendment right to a unanimous verdict for a conviction of aggravated rape, which mandates life imprisonment, was violated. *See* La.R.S. 14:42(D)(1). He alleges that La.Code Crim.P. art. 782, which allows non-unanimous verdicts in non-capital cases where

8

"punishment is necessarily confinement at hard labor," is unconstitutional. The jury, in this case, returned a ten-to-two vote to convict him of the offense.

An appellate court may not consider a constitutional challenge unless it was properly pleaded and raised in the trial court. *State v. Hatton*, 07-2377 (La.7/1/08), 985 So.2d 709. While Defendant does not mention it in his brief, a "Motion for Special Jury Instruction—Unanimous Verdict with Incorporated Memorandum" was filed on April 20, 2015. The motion was heard on April 27, 2015, and denied on the same date. The trial court noted Defendant's objection to the denial.

In his motion for the special jury instruction regarding unanimous verdicts, Defendant questioned the survivability of *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628 (1972) for noncompliance with the federal rule regarding unanimous jury verdicts "once the United States Supreme Court again grants certiorari on this issue." He argued that for this reason he was preserving the issue. He further argued there was a racial bias behind the State's insistence that La.Code Crim.P. art. 782 was constitutional and, whereas he was black, his Fourth Amendment right against discrimination was being violated.

In *State v. Wilmot,* 13-994, pp. 6-9 (La.App. 5 Cir. 5/14/14), 142 So.3d 141, 146-48 (footnotes omitted), wherein the defendant was convicted of aggravated rape, sentenced to life imprisonment, and argued on appeal that La.Code Crim.P. art. 782 was unconstitutional, the fifth circuit stated:

> The punishment for aggravated rape is life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La. Const. Art. I, § 17(A) provides that a criminal case "in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict." In addition, LSA-C.Cr.P. art. 782(A) provides, in part: "Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict." In the instant case, defendant was found guilty of aggravated rape by a verdict of eleven to one. He now challenges the constitutionality of the non-unanimous jury verdict.

Under both state and federal jurisprudence, a criminal conviction by a less than unanimous jury does not violate the Sixth and Fourteenth Amendments to the United States Constitution. In *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), the United States Supreme Court held that a state court conviction of a crime by less than a unanimous jury does not violate the right to trial by jury specified by the Sixth Amendment and made applicable to the states by the Fourteenth Amendment.

Likewise, the Louisiana Supreme Court has consistently held that non-unanimous jury verdicts for twelve-person juries are not unconstitutional in non-capital cases. See *State v. Edwards*, 420 So.2d 663, 674 (La.1982). In *State v. Bertrand*, 08-2215, 08-2311 (La.3/17/09), 6 So.3d 738, 743, the Louisiana Supreme Court specifically reversed a district court ruling which found LSA-C.Cr.P. art. 782 unconstitutional. In reaffirming well-established jurisprudence that a non-unanimous jury verdict is constitutional and does not violate the Fifth, Sixth, or Fourteenth Amendments, the *Bertrand* court stated as follows:

> Due to this Court's prior determinations that Article 782 withstands constitutional scrutiny, and because we are not presumptuous enough to suppose, upon mere speculation, that the United States Supreme Court's still valid determination that non-unanimous 12 person jury verdicts are constitutional may someday be overturned, we find that the trial court erred in ruling that Article 782 violated the Fifth, Sixth, and Fourteenth Amendments. With respect to that ruling, it should go without saying that a trial judge is not at liberty to ignore the controlling jurisprudence of superior courts.

In accordance with *State v. Bertrand*, *supra*, this Court has consistently upheld the constitutionality of Louisiana law which allows for non-unanimous jury verdicts in non-capital cases. *See State v. Napoleon*, 12-749 (La.App. 5 Cir. 5/16/13), 119 So.3d 238, 246; *State v. Brooks*, 12-226 (La.App. 5 Cir. 10/30/12), 103 So.3d 608, 614, *writ denied*, 12-2478 (La.4/19/13), 111 So.3d 1030; *State v. Wade,* 10-997 (La.App. 5 Cir. 8/30/11), 77 So.3d 275, 281-282; *State v. Carter*, 10-973 (La.App. 5 Cir. 8/30/11), 75 So.3d 1, 5-6, *writ denied*, 11-2060 (La.2/10/12), 80 So.3d 469; *State v. Jacobs,* 07-887 (La.App. 5 Cir. 5/24/11), 67 So.3d 535, 591-592, *writ denied*, 11-1753 (La.2/10/12), 80 So.3d 468, *cert. denied*, ___ U.S. ___, 133 S.Ct. 139, 184 L.Ed.2d 67 (2012); and *State v. Smith,* 09-100 (La.App. 5 Cir. 8/25/09), 20 So.3d 501, 505-508, *writ denied*, 09-2102 (La.4/5/10), 31 So.3d 357.

As part of his equal protection argument on appeal, defendant contends that the enacting provision of Article I, § 17 of the Louisiana Constitution was based on racial discriminatory intent and therefore violates equal protection. Both the United States Supreme Court and the Louisiana Supreme Court have previously addressed this issue and

found it to be without merit. In *Apodaca v. Oregon,* 92 S.Ct. at 1634, the Supreme Court reasoned:

> We also cannot accept petitioners' second assumption-that minority groups, even when they are represented on a jury, will not adequately represent the viewpoint of those groups simply because they may be outvoted in the final result. They will be present during all deliberations, and their views will be heard. We cannot assume that the majority of the jury will refuse to weigh the evidence and reach a decision upon rational grounds, just as it must now do in order to obtain unanimous verdicts, or that a majority will deprive a man of his liberty on the basis of prejudice when a minority is presenting a reasonable argument in favor of acquittal. We simply find no proof for the notion that a majority will disregard its instructions and cast its votes for guilt or innocence based on prejudice rather than the evidence.

Likewise, in *State v. Bertrand*, 6 So.3d at 743, the Louisiana Supreme Court rejected the argument that non-unanimous jury verdicts have an insidious racial component and pointed out that a majority of the United States Supreme Court also rejected that argument in *Apodaca v. Oregon, supra*.

Recently, the defendant, in *State v. Hammond*, 12-1559 (La.App. 1 Cir. 3/25/13), 115 So.3d 513, *writ denied,* 13-887 (La.11/8/13), 125 So.3d 442, *cert. denied*, ___ U.S. ___, 134 S.Ct. 1939, 188 L.Ed.2d 965 (2014), raised the same arguments raised by defendant herein. In the *Hammond* case, the defendant argued that Article I, § 17(A) of the Louisiana Constitution, that allows for non-unanimous jury verdicts, violates the right to jury trial and the right to equal protection of the laws guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution. As in the instant case, the defendant, as part of his equal protection argument, asserted that the enactment of the source provision in the Louisiana Constitution of 1898 was motivated by an express and overt desire to discriminate on the basis of race. Relying on *Apodaca v. Oregon, supra*, and *State v. Bertrand, supra*, the appellate court rejected the defendant's arguments and found that Article I, § 17(A) of the Louisiana Constitution and LSA-C.Cr.P. art. 782(A) are not unconstitutional and, therefore, not in violation of the defendant's federal rights.

Likewise, based on well-established jurisprudence, we find no merit to defendant's arguments relating to the constitutionality of Louisiana law which allows for non-unanimous jury verdicts in non-capital cases. These assigned errors are without merit.

*See also State v. Webb*, 13-146 (La.App. 4 Cir. 1/30/14), 133 So.3d 258, *writ*

*denied*, 14-436 (La. 10/3/14), 149 So.3d 793, *cert. denied*, ___U.S. ___, 135 S.Ct.

1719 (2015), and *State v. Dorsey*, 12-1816 (La.App. 1 Cir. 2/4/14), 137 So.3d 651,

*writ denied*, 14-378 (La. 9/19/14), 148 So.3d 951, *cert. denied*, ___ U.S. ___, 135 S.Ct. 1495 (2015), wherein the defendants, who were convicted of aggravated rape and sentenced to life imprisonment, raised the same constitutional issues as in the current case, and La.Code Crim.P. art. 782(A) was found constitutional by the appellate courts, and reviews of those decisions were denied by Louisiana Supreme Court and the United States Supreme Court.

Therefore, we find this assignment of error has no merit.

## DECREE

For the foregoing reasons, Defendant's convictions and sentences are affirmed. The trial court is directed to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to him within ten days of the rendition of the opinion and to file written proof in the record that Defendant received the notice.

**AFFIRMED.**