ROBERT A. CHAISSON, Judge.
|2In this appeal, defendant, Michael Wil-mot, seeks review of his convictions and sentences for aggravated rape and sexual battery. For the reasons that follow, we find no merit to the arguments raised on appeal, and accordingly, we affirm defendant’s convictions and sentences.

PROCEDURAL HISTORY

On June 28, 2012, a Jefferson Parish Grand Jury returned an indictment charging defendant, in count one, with aggravated rape, in violation of LSA-R.S. 14:42, and in count two, with sexual battery of a victim under the age of thirteen, in violation of LSA-R.S. 14:43.1. Defendant pled not guilty at his arraignment. On July 15 and 16, 2013, the matter proceeded to trial before a twelve-person jury which found defendant guilty as charged on both counts.
On August 1, 2013, the trial court sentenced defendant, on the aggravated rape conviction to life imprisonment at hard labor without benefit of parole, ^probation, or suspension of sentence. As to the sexual battery conviction, the trial court sentenced defendant to ninety-nine years at hard labor without benefit of parole, probation, or suspension of sentence, to run consecutively to the aggravated rape sentence. Defendant now appeals.

FACTS

On March 12, 2012, K.A.,[1] the female juvenile victim, disclosed to the staff at her elementary school that defendant, her mother’s live-in boyfriend, had sexually abused and raped her. In particular, Jodi Bonnette, one of K.A.’s teachers, noticed that K.A.’s performance in school had declined, and when she spoke to K.A. about it, K.A. asked if she could speak to Ms. Bonnette in private. During their conversation, K.A. told her teacher that her stepfather started touching her and that she was no longer a virgin. Although K.A. asked her not to tell anyone, Ms. Bonnette explained that she had to report it. The two then went to the principal’s office, at which time the Department of Child and Family Services and the Jefferson Parish Sheriffs Office were notified.
Deputy Chad Lachney of the Jefferson Parish Sheriffs Office responded to the call. Upon his arrival at the school, he spoke to K.A., who informed him that “sexual encounters” had occurred between her and her mother’s boyfriend. Deputy Lachney then notified the Personal Violence Unit of the Jefferson Parish Sheriffs Office. In response, Detective Kay Horne proceeded to the school and spoke with K.A. who advised her that defendant had sexually abused her. In particular, K.A. advised Detective Horne that the abuse, which began when she |4was six years old, started with “skin to skin contact” and then progressed to defendant touching her vagina and performing oral, vaginal, and anal sex on her.
Later that evening, Detective Horne interviewed defendant at the detective bu *145 reau. After being advised of his rights and waiving them, defendant gave a recorded statement, in which he admitted to performing oral sex upon K.A., as well as having vaginal sex with K.A. However, he claimed that the sexual contact was initiated by the victim. At the completion of this statement, defendant was placed under arrest for aggravated rape and taken to the Jefferson Parish Correctional Center.
K.A. was subsequently interviewed at the Children’s Advocacy Center. In this interview, which was played for the jury, K.A. recounted the details of the sexual abuse which began in South Carolina when she was six years old. In addition, K.A. testified at trial regarding her relationship with defendant and the specific incidents of sexual abuse. According to K.A., who was twelve years old at the time of trial, she first met defendant in South Carolina when she was six years old. In fact, defendant lived with her and her mother for a total of about five years, first in South Carolina and then in Metairie. K.A. explained that in the beginning of her relationship with defendant, she looked up to him and even referred to him as “daddy.” While in South Carolina, defendant started “touching” and “licking” her vagina. According to K.A., defendant first performed oral sex on her when she was six years old in South Carolina and did that a total of five times.
Once K.A., her mother, and defendant moved to Jefferson Parish, the situation got worse. Defendant began to touch his penis to K.A.’s vagina, and he forced K.A. to perform oral sex on him twice and made her touch his penis. While in Louisiana, defendant continued to touch K.A. on her vagina, twice had vaginal intercourse with her, and once had anal sex. According to K.A., one act of vaginal | .^intercourse occurred on a couch at their Metairie apartment, and the second incident of vaginal intercourse occurred on a bed in their apartment, as did the act of anal sex. The acts of oral sex occurred in the living room of the apartment. Following the acts of rape, defendant wiped himself off and also wiped off K.A.’s legs and sometimes her back. Defendant told K.A. not to tell anyone about the things he was doing to her.
During her trial testimony, K.A. admitted that in the course of explaining what happened to her to law enforcement and medical personnel, she said some things that were not true. Specifically, she lied in her previous statement when she said that defendant used rope and duct tape on her while abusing her. K.A. also lied when she said her mother knew about the abuse; however, she maintained that she tried telling her mother about the abuse by writing her a note, but her mother did not understand.
At trial, defendant testified on his own behalf and denied any sexual contact with K.A. According to defendant, at the time he gave the statement to police admitting the sexual encounters, he had ingested two pain pills and a large amount of crack. Further, he claimed that he only gave the statement because he believed if he did, then K.A. would not be taken away from her mother. In addition, defendant claimed that he gave the statement as a way to end his troubled relationship with K.A.’s mother.

CONSTITUTIONALITY OF NON-UNANIMOUS JURY VERDICT

In his first two related assignments of error, defendant claims that Article I, § 17 of the Louisiana Constitution, that allows for non-unanimous jury verdicts, violates the right to a jury trial and the right to equal protection of the laws | ^guaranteed by the Sixth and Fourteenth *146 Amendments of the United States Constitution.[2]
The punishment for aggravated rape is life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La. Const. Art. I, § 17(A) provides that a criminal case “in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict.” In addition, LSA-C.Cr.P. art. 782(A) provides, in part: “Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict.” In the instant case, defendant was found guilty of aggravated rape by a verdict of eleven to one.[3] He now challenges the constitutionality of the non-unanimous jury verdict.
Under both state and federal jurisprudence, a criminal conviction by a less than unanimous jury does not violate the Sixth and Fourteenth Amendments to the United States Constitution. In Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), the United States Supreme Court held that a state court conviction of a crime by less than a unanimous jury does not violate the right to trial by jury specified by the Sixth Amendment and made applicable to the states by the Fourteenth Amendment.[4]
Likewise, the Louisiana Supreme Court has consistently held that non-unanimous jury verdicts for twelve-person juries are not unconstitutional in nonjcapital? cases. See State v. Edwards, 420 So.2d 663, 674 (La.1982). In State v. Bertrand, 08-2215, 08-2311 (La.3/17/09), 6 So.3d 738, 743, the Louisiana Supreme Court specifically reversed a district court ruling which found LSA-C.Cr.P. art. 782 unconstitutional. In reaffirming well-established jurisprudence that a non-unanimous jury verdict is constitutional and does not violate the Fifth, Sixth, or Fourteenth Amendments, the Bertrand court stated as follows:
Due to this Court’s prior determinations that Article 782 withstands constitutional scrutiny, and because we are not presumptuous enough to suppose, upon mere speculation, that the United States Supreme Court’s still valid determination that non-unanimous 12 person jury verdicts are constitutional may someday be overturned, we find that the trial court erred in ruling that Article 782 violated the Fifth, Sixth, and Fourteenth Amendments. With respect to that ruling, it should go without saying that a trial judge is not at liberty to ignore the controlling jurisprudence of superior courts.
In accordance with State v. Bertrand, supra, this Court has consistently upheld the constitutionality of Louisiana law *147 which allows for non-unanimous jury verdicts in non-capital cases. See State v. Napoleon, 12-749 (La.App. 5 Cir. 5/16/13), 119 So.3d 238, 246; State v. Brooks, 12-226 (La.App. 5 Cir. 10/30/12), 103 So.3d 608, 614, writ denied, 12-2478 (La.4/19/13), 111 So.3d 1030; State v. Wade, 10-997 (La.App. 5 Cir. 8/30/11), 77 So.3d 275, 281-282; State v. Carter, 10-973 (La.App. 5 Cir. 8/30/11), 75 So.3d 1, 5-6, writ denied, 11-2060 (La.2/10/12), 80 So.3d 469; State v. Jacobs, 07-887 (La.App. 5 Cir. 5/24/11), 67 So.3d 535, 591-592, writ denied, 11-1753 (La.2/10/12), 80 So.3d 468, cert. denied, — U.S. —, 133 S.Ct. 139, 184 L.Ed.2d 67 (2012); and State v. Smith, 09-100 (La.App. 5 Cir. 8/25/09), 20 So.3d 501, 505-508, writ denied, 09-2102 (La.4/5/10), 31 So.3d 357.
As part of his equal protection argument on appeal, defendant contends that the enacting provision of Article I, § 17 of the Louisiana Constitution was based on racial discriminatory intent and therefore violates equal protection. Both the IsUnited States Supreme Court and the Louisiana Supreme Court have previously addressed this issue and found it to be without merit. In Apodaca v. Oregon, 92 S.Ct. at 1634, the Supreme Court reasoned:
We also cannot accept petitioners’ second assumption-that minority groups, even when they are represented on a jury, will not adequately represent the viewpoint of those groups simply because they may be outvoted in the final result. They will be present during all deliberations, and their views will be heard. We cannot assume that the majority of the jury will refuse to weigh the evidence and reach a decision upon rational grounds, just as it must now do in order to obtain unanimous verdicts, or that a majority will deprive a man of his liberty on the basis of prejudice when a minority is presenting a reasonable argument in favor of acquittal. We simply find no proof for the notion that a majority will disregard its instructions and cast its votes for guilt or innocence based on prejudice rather than the evidence.
Likewise, in State v. Bertrand, 6 So.3d at 743, the Louisiana Supreme Court rejected the argument that non-unanimous jury verdicts have an insidious racial component and pointed out that a majority of the United States Supreme Court also rejected that argument in Apodaca v. Oregon, supra.
Recently, the defendant, in State v. Hammond, 12-1559 (La.App. 1 Cir. 3/25/13), 115 So.3d 513, writ denied, 13-887 (La.11/8/13), 125 So.3d 442, cert. denied, — U.S. —, 134 S.Ct. 1939, 188 L.Ed.2d 965 (2014), raised the same arguments raised by defendant herein. In the Hammond case, the defendant argued that Article I, § 17(A) of the Louisiana Constitution, that allows for non-unanimous jury verdicts, violates the right to jury trial and the right to equal protection of the laws guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution. As in the instant case, the defendant, as part of his equal protection argument, asserted that the enactment of the source provision in the Louisiana Constitution of 1898 was motivated by an express and overt desire to discriminate on the basis of race. Relying on Apodaca v. Oregon, supra, and State v. Bertrand, supra, the appellate |acourt rejected the defendant’s arguments and found that Article I, § 17(A) of the Louisiana Constitution and LSA-C.Cr.P. art. 782(A) are not unconstitutional and, therefore, not in violation of the defendant’s federal rights.
Likewise, based on well-established jurisprudence, we find no merit to defendant’s arguments relating to the constitu *148 tionality of Louisiana law which allows for non-unanimous jury verdicts in non-capital cases. These assigned errors are without merit.

EXCESSIVE SENTENCE

In assignments of error numbers three and four, defendant contends that the sentence imposed for the sexual battery conviction was excessive and further contends that the trial court erred in denying his motion to reconsider sentence.
Defendant was convicted of aggravated rape of a juvenile and was sentenced to the mandatory term of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence pursuant to LSA-R.S. 14:42. In his appellate brief, defendant acknowledges the mandatory nature of this sentence and does not challenge it as excessive.[5]
Defendant was also convicted of sexual battery of a child under the age of thirteen and was sentenced, pursuant to LSA-R.S. 14:43.1, to the maximum sentence of ninety-nine years at hard labor without benefit of parole, probation, or suspension, to be served consecutively to his life sentence on count one. On appeal, defendant contends that this sentence is excessive and points to the fact that the trial court failed to consider the sentencing guidelines set forth in LSA-C.Cr.P. art. 894.1. Further, defendant challenges the consecutive nature of the sentence | inarguing that the two offenses were part of a common scheme, and thus, concurrent sentences were appropriate pursuant to LSA-C.Cr.P. art. 883.
In the present case, although defendant contends that the trial court erred in denying his motion to reconsider sentence, there is no indication in the record before us that defendant filed a motion to reconsider sentence or even orally objected at the time the sentences were imposed. The failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a review of his sentence for constitutional excessiveness only. State v. Williams, 11-427 (La.App. 5 Cir. 2/28/12), 88 So.3d 1102, 1111-12. Since defendant failed to file a motion to reconsider sentence and failed to object to the consecutive nature of the sentence[6] and to the trial court’s failure to comply with the sentencing guidelines, defendant is limited to a review of his sentence for constitutional excessiveness.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739 (La.1992).
In reviewing a sentence for ex-cessiveness, the reviewing court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate *149 as to shock its sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing the sentence. State v. Allen, 03-1205 (La.App. 5 Cir. 2/23/04), 868 So.2d 877. | iiOn appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. State v. Walker, 00-3200 (La.10/12/01), 799 So.2d 461, 462.
With regard to his sexual battery-conviction, the trial court sentenced defendant, pursuant to the provisions of LSA-R.S. 14:43.1, to the maximum penalty of ninety-nine years at hard labor without benefit of parole, probation, or suspension of sentence. Generally, maximum sentences are reserved for cases involving the most serious violations of the offense charged and the worst type of offender. State v. McCorkle, 97-966 (La.App. 5 Cir. 2/25/98), 708 So.2d 1212, 1218. However, the jurisprudence indicates that maximum, or nearly maximum terms of imprisonment may not be excessive when the defendant has exploited a position of trust to commit sexual battery or indecent behavior with a juvenile. State v. Badeaux, 01-406 (La.App. 5 Cir. 9/25/01), 798 So.2d 234, writ denied, 01-2965 (La.10/14/02), 827 So.2d 414.
Although there do not appear to be any Louisiana cases, in which a defendant convicted of sexual battery of a child under the age of thirteen received a sentence of ninety-nine years, we nonetheless, based on the record before us, find that the trial court did not abuse his sentencing discretion in the imposition of sentence. The record indicates that K.A. was only six years old when the sexual abuse began and that she considered defendant a father figure, as evidenced by her calling him “daddy.” Moreover, K.A. informed the court, by way of a letter read at the sentencing hearing, that defendant placed her life “upside down” and caused her “loss of sleep, nightmares, loss of appetite, lack of concentration, fear of being alone, and anger ...” K A. further wrote that defendant caused her relationship with her mother to be not “as close anymore because of what he did to us.” K.A.’s [ ^mother also submitted a letter to the court stating that the situation with defendant caused her to have “nightmares, sleeplessness, depression, anxiety, loss of.appetite, ...” In her letter, K.A.’s mother further expressed that she worries all the time and is extremely scared to lose sight of her daughter for fear of her being harmed again. The trial court clearly considered these letters as well as the circumstances of the case and stated as follows:
Mr. Wilmot, stand up, sir. What [K.A.] needed for you to be was a true father figure. Instead, you robbed her of her innocence, stole her childhood, and have left her scarred for life. The crimes that you committed upon that young girl are as atrocious as they come.
Given these circumstances, we cannot say that the trial court abused his sentencing discretion. Moreover, we note that defendant’s sentence for aggravated rape is a mandatory life sentence without benefit of parole, probation, or suspension of sentence. Thus, the imposition of the ninety-nine year sentence for sexual battery will not practically affect the duration of defendant’s sentence.
Accordingly, the arguments raised by defendant in these assigned errors are likewise without merit.

ERROR PATENT REVIEW

We have also reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Wetland, 556 So.2d 175 (La.App. 5th Cir.1990). Our *150 review reveals a discrepancy between the transcript and the commitment. While the commitment reflects that defendant was given a proper advisal of the time period for seeking post-conviction relief as required by LSA-C.Cr.P. art. 930.8, the transcript indicates that the trial court failed to provide any such advisal.
It is well settled that if a trial court fails to advise, or provides an incomplete advi-sal, pursuant to LSA-C.Cr.P. art. 980.8, the appellate court may correct this | ,serror by informing defendant of the applicable prescriptive period for post-conviction relief. See State v. Brooks, 103 So.3d at 615. Thus, in accordance with this Court’s routine practice, we advise defendant, by this opinion, that no application for post-conviction relief, including an application for an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of LSA-C.Cr.P. art. 914 or 922.
Accordingly, for the reasons set forth herein, we affirm defendant’s convictions and sentences for aggravated rape and sexual battery of a child under the age of thirteen.

CONVICTIONS AND SENTENCES AFFIRMED.

. In the interest of protecting minor victims and victims of sexual offenses as set forth in LSA-R.S. 46:1844(W)(3), the judges of this Court have adopted a policy that this Court's published work will use only initials to identify the victim and any defendant or witness whose name can lead to the victim's identity (i.e., parent, sibling, or relative with the same last name as the victim). State v. E,J.M., III, 12-774 (La.App. 5 Cir. 5/23/13), 119 So.3d 648. Compare State v. R.W.B., 12-453 (La. 12/4/12), 105 So.3d 54.

.We note, as the State points out, that defendant did not raise the issue of the constitutionality of non-unanimous jury verdicts in the district court. Having failed to raise this issue in the trial court, defendant is not entitled to have it considered and reviewed by the appellate court. LSA-C.Cr.P. art. 841. However, this Court has considered the merits of the issue of the constitutionality of non-unanimous jury verdicts, even after noting that the issue was not properly raised in the district court. State v. Brooks, 12-226 (La.App. 5 Cir. 10/30/12), 103 So.3d 608, 614, writ denied, 12-2478 (La.4/19/13), 111 So.3d 1030.

. The jury found defendant guilty of sexual battery by a unanimous verdict.

. Although Apodaca v. Oregon, supra, was a plurality rather a majority decision, the United State Supreme Court has cited or discussed the Apodaca opinion various times since its issuance and, on each of these occasions, it is apparent that the Apodaca holding as to non-unanimous verdicts represents well-settled law. State v. Bertrand, 08-2215, 08-2311 (La.3/17/09), 6 So.3d 738, 742.

. The mandatory life sentence for aggravated rape is not a violation of the prohibition against excessive punishment. See State v. Talbert, 416 So.2d 97, 102 (La.1982); State v. Lewis, 98-672 (La.App. 5 Cir. 3/10/99), 732 So.2d 556, 560, writ denied, 99-2818 (La.4/20/00), 760 So.2d 334.

. This Court has held that when the consecutive nature of sentences is not specifically raised in the trial court, the issue is not included in the bare constitutional excessiveness review. State v. Escobar-Rivera, 11-496 (La.App. 5 Cir. 1/24/12), 90 So.3d 1, 8, writ denied, 12-0409 (La.5/25/12), 90 So.3d 411.