STATE OF LOUSIANA

VERSUS

HOANG M. LE

NO. 22-KA-468

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 20-2167, DIVISION "E"
HONORABLE FRANK A. BRINDISI, JUDGE PRESIDING

August 09, 2023

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
Stephen J. Windhorst, and Cornelius E. Regan, Pro Tempore

**AFFIRMED; REMANDED WITH INSTRUCTIONS**
**SJW**
**MEJ**
**CER**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUSISIANA
Honorable Paul D. Connick, Jr.
Juliet L. Clark
Thomas J. Butler

COUNSEL FOR DEFENDANT/APPELLANT,
H.L.
Kevin V. Boshea

**WINDHORST, J.**

Defendant, Hoang M. Le, appeals his convictions and sentences for sexual battery of a juvenile under thirteen (count one) and sexual battery (count two). For the following reasons, we affirm defendant's convictions and sentences, and remand with instructions.

**PROCEDURAL HISTORY**

On June 23, 2020, the Jefferson Parish District Attorney's Office filed a bill of information charging defendant, Hoang M. Le, with sexual battery of a juvenile under thirteen occurring between April 1, 2009 and March 31, 2016 (count one) and sexual battery occurring between April 1, 2016 and April 1, 2020 (count two) both in violation of La. R.S. 14:43.1. At his arraignment, defendant pled not guilty.

On May 20, 2022, the State filed a notice of intent to introduce evidence under La. C.E. art. 412.2, or in the alternative, La. C.E. art. 404 B. In this motion, the State referred to an incident on a fishing trip where defendant pinned the victim down in the backseat of his car and penetrated her with his penis, which was included in a previously produced report during discovery. The State also indicated that during trial preparation, the victim had recalled additional incidents of sexual abuse, including the following: (1) an incident in her bedroom when defendant pulled her shorts aside, put his penis inside of her, and ejaculated on her bed; (2) one in the bathroom after her bath, when defendant placed her on the bathroom counter and licked her vagina; (3) multiple incidents at home when he grabbed her buttocks; and (4) one in Walmart when defendant grabbed her breast. Defendant filed a motion to exclude the State's untimely notice of 412.2 and 404 B evidence and, in the alternative, a motion to continue trial. After a hearing, the trial court granted defendant's motion to exclude the newly disclosed evidence, but denied it as to those allegations previously provided in discovery, which included the incident on the fishing trip.

22-KA-468                                    1

Trial commenced on May 23, 2022, and on May 24, 2022, the jury rendered a unanimous verdict, finding defendant guilty of sexual battery of a juvenile under the age of thirteen and sexual battery.

On May 30, 2022, defendant filed a motion for acquittal notwithstanding the verdict, asserting that the State was unable to meet its burden of proof as to both counts, and that he should be granted an acquittal. Defendant also timely filed a motion for new trial, alleging that the verdict was contrary to the law and the evidence because there was no physical evidence and no witnesses to corroborate the victim's testimony. Defendant argued that he should be granted a new trial because the evidence of a prior incident of alleged first degree rape was inadmissible. He contended that he did not have adequate time to prepare for the introduction of the evidence, and that it was more prejudicial than probative. The trial court denied both motions.

On June 3, 2022, the trial court sentenced defendant to seventy-five years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence as to count one, and ten years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence as to count two. The trial court ordered the sentences to run concurrent with each other. The trial court denied defendant's motion for reconsideration of the sentence.

**FACTS and TESTIMONY AT TRIAL**

This case involves the sexual abuse of defendant's stepdaughter, which began when she was six years old and continued until she was sixteen years old. The victim first reported the abuse to the police on April 1, 2020 when she turned seventeen years old.

At trial, the victim testified that she was born on April 1, 2003, and that defendant sexually abused her over the course of several years. The first incident occurred when she was about six years old and was asleep on a twin bed in her

mother's bedroom. The victim and defendant were alone in the bedroom, and she was awakened by defendant's penis touching her face.

Another incident occurred while defendant took her on a fishing trip when she was between the ages of seven and ten years old. Because her fishing rod broke, she and defendant walked back to his black Eclipse for tools to fix it. The victim sat in the backseat, while defendant stood outside and leaned the top half of his body into the vehicle and began touching her. Defendant held her down and removed her shorts and underwear. Defendant penetrated her with his penis, and she remembered him moving back and forth while his penis was inside her. The victim testified that when he stopped penetrating her, she saw him ejaculate on her shorts. Afterwards, they went to a gas station where he wiped his semen off of her. The victim stated that she did not tell anyone about it because she was scared, and defendant told her not to tell her mother because she would not want her.

The victim also testified regarding an incident that occurred while she and defendant were riding in a Toyota Camry to Hi-Do Bakery when she was between ten and thirteen years old. During the drive home, defendant put his hand in her pants, touched her vagina with his fingers, and rubbed her clitoris. Defendant told her that if he were not with her mother, he would try to "hit on" her.

The victim testified that another incident occurred when she was in the fifth grade in her brothers' bedroom while the door was open. Multiple family members were home at the time. Defendant held the victim down on her back on her brother's bed. She recalled that he pushed her shorts and underwear to the side and unzipped his pants. The victim stated that she saw defendant's erect penis, and that the tip of his penis touched her vagina. Defendant stopped and zipped up his pants because he heard her mother approaching.

The victim first told her mother about the sexual abuse when she was in the eighth grade while her mother and defendant were briefly separated. The victim felt

relieved and happy when defendant and her mother separated because she thought she would not have to see him again. She believed that defendant would not return to the house, but her mother allowed him to come back. Her mother had defendant install a lock with a key on her bedroom door. The victim indicated that when defendant returned home, the abuse temporarily stopped.

The victim testified that because she had trouble sleeping, she would take melatonin and it would put her in a deep sleep. She testified that one night she woke up from a deep sleep, saw defendant's semen on her bed, and felt an aching pain in her vagina.

The victim described a more recent incident that occurred as they were entering Target when defendant told her he could see her underwear through her leggings and grabbed her butt. She stated that defendant yanked her shirt down, that defendant walked very close behind her, and that he grabbed her butt. At trial, the State played a surveillance video from Target showing this incident.

The victim further identified abuse that occurred when she was sixteen, and sleeping because she did not feel well. She woke up because defendant's fingers were touching her vagina. She explained that his hands were inside of her underwear but that he did not insert his finger into her vagina. He stopped when she began to move and then used his hand to take her temperature. The victim testified that she did not tell anyone about it because her mom did not do anything when she had previously told her mother about the sexual abuse. She testified that this was the last incident.

On the day that the victim decided to call the police, her mother sent her a text message, discouraging her from reporting defendant. She reported the abuse because she did not want it to happen again. She explained that after what happened to her, she had very bad anxiety attacks when "people would hover over" her.

The victim's mother testified at trial that she met defendant in 2009 or 2010, and that he moved in with her at her parents' house about six months after they started dating. They were married in 2012. They lived on Spanish Oaks Drive in Harvey, Louisiana with her parents, her children, her brother, her sister, and her niece. She acknowledged that despite the amount of people living in the home, there were still times when defendant and the victim were alone together.

The victim's mother confirmed that in 2015, the victim told her defendant had sexually abused her. The victim's mother testified that, on the day that the victim told her about the abuse, she and defendant had an unrelated fight earlier in the day and that she "threw him out." She was crying in her bedroom about that fight when the victim approached her. The victim disclosed to her mother at this time that "her dad's been touching her." The victim told her mother that he tried to penetrate her. When she asked the victim why she did not tell her before, the victim told her mother that defendant said no one, including her mother, would believe her.

The victim's mother confronted defendant about the alleged sexual abuse, but he denied it. The victim's mother, however, had defendant install a lock with a key on the victim's bedroom door. The victim's mother did not tell anyone about the allegations, and defendant moved back in. The victim's mother testified that she did not call the police because she left the decision up to the victim, and because she wanted to have defendant with the family to help co-parent and for her younger daughter to have her father at home. She asserted that defendant was a good father to all of her children and that they, including the victim, loved him. She never saw defendant do anything sexual toward the victim.

The State's prosecutor questioned the victim's mother regarding her reaction to the victim reporting the alleged sexual abuse to the police. The victim's mother explained that she discouraged the victim from reporting defendant because he had pending claims related to automobile accidents for which they expected to receive

some money. She thought reporting him to the police would jeopardize their receipt of that money. The State introduced a corroborating text message from the victim's mother to the victim before the victim called 911 to report the sexual abuse consistent with this testimony.

Nicholas Sanderson, who was a detective in the Personal Violence Unit of the Jefferson Parish Sheriff's Office, investigated this case and testified at trial regarding his investigation. Initially, Detective Sanderson interviewed the victim at the investigations bureau and took a formal statement. During the interview, Detective Sanderson learned that the victim had previously reported the incident to her mother, and that her mother knew she intended to report the incident to the police. He obtained photographs of the text message from the victim's mother in which her mother discouraged her from reporting the abuse to the police.

During his interview with the victim, she disclosed to him that the abuse began when she was six years old and that defendant would touch her on her breasts, buttocks, and vagina over her clothing. The victim told Detective Sanderson that several incidents occurred at their residence in Harvey, Louisiana when she passed him in the hallway and sometimes when he came into her bedroom. Defendant told the victim that if she disclosed the incidents to her mother, her mother "would not love" her anymore.

At this time, the victim told Detective Sanderson about multiple incidents of sexual abuse, including when defendant took her fishing and pinned her down and penetrated her in the back seat of his Mitsubishi Eclipse; when they were riding in the car to Hi-Do Bakery to buy a king cake; in her brother's bedroom at the house while multiple family members were home; and in her bedroom when she was sleeping and ill.

Detective Sanderson gathered evidence that defendant owned and/or operated a Mitsubishi Eclipse and a Toyota Camry given the allegations of incidents involving

these types of vehicles. In addition, because the victim told him about an incident that occurred at Target, Detective Sanderson collected video surveillance from Target to corroborate her statement.

Based on the victim's interview and the evidence collected, the detective went to defendant's residence and arrested him on unrelated outstanding warrants, apparently for unpaid traffic tickets, based on trial testimony. He interviewed defendant and the victim's mother at the investigation bureau. When questioned, defendant denied all the allegations of sexual abuse. The victim's mother told Detective Sanderson that about five years ago, the victim told her about the sexual abuse when her and defendant had separately briefly.

Defendant, who was thirty-two years old at the time of trial, testified at trial and denied all the allegations. He also denied that the victim's mother confronted him about the allegations in 2015. He, however, acknowledged that he told Detective Sanderson he had changed the locks on the victim's bedroom door because her mother asked him to do it. Defendant admitted that the whole family went fishing but denied ever taking the victim fishing one-on-one.

The trial court accepted Dr. Anne Troy as an expert in the field of child abuse and child abuse pediatrics specifically relative to delayed disclosures. Dr. Troy testified that it is common for children to delay reporting sexual abuse. Dr. Troy explained that delayed disclosure is often due to shame, guilt, naiveté, fear nobody will believe them, or the belief their family needs the perpetrator for financial support. She testified that an individual might decide to report the sexual abuse after a long period if the individual notices that a younger child is receiving attention and she wants to protect the younger child. Dr. Troy also indicated that a first disclosure of sexual abuse does not typically provide all of the details of the abuse.

## ASSIGNMENTS of ERROR

Defendant asserts the following assignments of error: (1) the district court erred in the denial of the motion for new trial; (2) he was denied a fair trial by the omission of proper responsive verdicts being presented to the jury for deliberation; (3) the verdict is contrary to the law and the evidence; (4) the district court erred in the denial of the motion for post-verdict judgment of acquittal; (5) his sentence of 75 years is excessive and unconstitutional; (6) the district court erred in the denial of the motion to reconsider sentence; (7) the State introduced testimony regarding prior bad acts of a sexual nature despite the district court's ruling prohibiting that evidence; and (8) the return of the verdicts was procedurally erroneous.

## LAW and ANALYSIS

### *Sufficiency of the Evidence*

Defendant asserts that the verdict is contrary to the law and evidence, and that the trial court erred in denying his motion for new trial and his motion for post-verdict judgment of acquittal. These assignments of error pertain to issues primarily related to the sufficiency of the evidence to support the verdicts.

The constitutional standard of review for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Garrison, 19-62 (La. App. 5 Cir. 4/23/20), 297 So.3d 190, 203, writ denied, 20-547 (La. 9/23/20), 301 So.3d 1190, cert. denied, — U.S. —, 141 S.Ct. 2864, 210 L.Ed.2d 967 (2021). The Jackson standard requiring that the evidence be viewed in the light most favorable to the prosecution compels the reviewing court to defer to the actual trier of fact's credibility calls, evidence weighing, and inference drawing. State v. Clifton, 17-538 (La. App. 5 Cir. 5/23/18), 248 So.3d 691, 702. An appellate court's function is not

to reassess the defendant's guilt or innocence in accordance with its appreciation of the facts and credibility of the witnesses, but to review the evidence in the light most favorable to the prosecution and determine whether there is sufficient evidence to support the jury's conclusion. State v. Bone, 12-34 (La. App. 5 Cir. 9/11/12), 107 So.3d 49, 58, writ denied, 12-2229 (La. 4/1/13), 110 So.3d 574.

The credibility of a witness, including the victim, is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of a witness. State v. Gonzalez, 15-26 (La. App. 5 Cir. 8/25/15), 173 So.3d 1227, 1233. In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. State v. Dominguez, 14-1 (La. App. 5 Cir. 8/28/14), 148 So.3d 648, 654, writ denied, 14-2033 (La. 5/22/15), 170 So.3d 982. In sex offense cases, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even when the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense. Clifton, 248 So.3d at 703.

Defendant was convicted of sexual battery of a juvenile under thirteen (count one) and sexual battery (count two). Defendant argues that no rational trier of fact could have found the victim to be sufficiently credible to find him guilty.

At trial, the jury heard conflicting testimony relative to defendant's actions. The victim attested to several acts committed by defendant that constituted sexual battery occurring at various times beginning when she was six years old and continuing until she was sixteen years old. The first incident occurred when she was awakened from sleep by defendant's penis touching her face.

The victim also testified to an incident that occurred when defendant took her fishing. The victim stated that while she was in the backseat of defendant's vehicle, defendant stood outside and leaned the top half of his body into the vehicle and began touching her. Defendant held her down and removed her shorts and

underwear. He penetrated her with his penis, and then ejaculate on her shorts. Afterwards, they went to a gas station where he wiped his semen off of her.

The victim also recalled an incident that occurred in a Camry when they went to Hi-Do Bakery for king cakes. She testified that during the drive, defendant put his hand in her pants, touched her vagina with his fingers, and rubbed her clitoris. The victim further testified to an incident where she woke up and saw defendant's semen on her bed. She described that she felt an aching pain in her vagina.

In contrast to the victim's testimony, defendant denied sexually assaulting the victim or having sex with her. The victim's mother testified that she confronted defendant about the allegations in 2015, but he denied them. He, however, acknowledged that he installed a lock on the victim's door at his wife's request.

Here, the jury, as the trier of fact, was presented with the contradictory testimony from the victim and defendant regarding the alleged sexual abuse. Ultimately, the jury chose to accept the victim's version of events, finding defendant guilty of sexual battery of a juvenile under thirteen and sexual battery. The victim provided detailed accounts of various acts of sexual abuse over a long period. In addition, she provided consistent accounts of the sexual abuse from when Detective Sanderson first interviewed her to trial. Further, there was no evidence the victim had any reason to make false allegations against defendant, but instead testified she wanted to prevent it from happening again. It is not the function of the appellate court to second-guess the credibility of a witness as determined by the trier of fact or to reweigh evidence absent impingement on fundamental due process. State v. Bienvenu, 14-541 (La. App. 5 Cir. 12/16/14), 167 So.3d 63, writ denied, 15-98 (La. 11/20/15), 180 So.3d 314. The trier-of-fact evaluates witness credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. State v. Singleton, 05-622 (La. App. 5 Cir. 1/31/06), 922 So.2d 647, 651.

We, as the reviewing court, cannot re-evaluate the jury's credibility determination. State v. Chinchilla, 20-60 (La. App. 5 Cir. 12/23/20), 307 So.3d 1189, 1197, writ denied, 21-274 (La. 4/27/21), 314 So.3d 838, cert. denied, — U.S. —, 142 S.Ct. 296, 211 L.Ed.2d 138 (2021). Accordingly, we conclude that a rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have found beyond a reasonable doubt that the evidence was sufficient under the Jackson standard to support defendant's convictions of sexual battery of a juvenile under thirteen and sexual battery. We therefore do not find that defendant is entitled to a judgment of acquittal or a new trial. We also do not find that the verdict is contrary to the law and evidence.

These assignments of error are without merit.

***Responsive Verdicts***

Defendant also asserts that he did not receive a fair trial because the proper responsive verdicts were not included on the jury verdict form for jury deliberation. Defendant claims that misdemeanor sexual battery under La. R.S. 43.1.1 should have been included as a responsive verdict for both counts and that simple battery should have also been a responsive verdict to count one. The record indicates that defendant did not object to the trial court's exclusion of these responsive verdicts on the jury verdict form.

In order to preserve the right to seek appellate review of an alleged trial court error, the party claiming the error must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection. La. C.Cr.P. art. 841 A; State v. Patin, 13-618 (La. App. 5 Cir. 9/24/14), 150 So.3d 435, 441, writ denied, 14-2227 (La. 4/22/16), 191 So.3d 1043; State v. Berroa-Reyes, 12-581 (La. App. 5 Cir. 1/30/13), 109 So.3d 487, 498. La. C.Cr.P. art. 841 A provides, in pertinent part, that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." State v. Knott, 05-2252 (La.

5/5/06), 928 So.2d 534, 535. This rule has two purposes: (1) to require counsel to call an error to the judge's attention at a time when the judge may correct the error; and (2) to prevent defense counsel from "sitting on" an error and gambling unsuccessfully on the verdict, and later resorting to appeal on an error that might have been corrected at trial. State v. Ruiz, 06-1755 (La. 4/11/07), 955 So.2d 81, 87.

Due to the absence of a contemporaneous objection to the responsive verdicts contained in the verdict form, we find that defendant did not preserve this issue for appellate review, and it is not reviewable on appeal.

Nonetheless, we also point out that defendant failed to demonstrate that the exclusion of these responsive verdicts was prejudicial, considering that the jury returned with a verdict of guilty as charged. State v. Morris, 05-290 (La. App. 5 Cir. 11/29/05), 917 So.2d 633, 640-41. Louisiana courts have held that before a conviction will be reversed on this basis, the defendant must demonstrate that the inclusion or exclusion of a responsive verdict was prejudicial and that fundamental due process was violated. State v. Serio, 94-131 (La. App. 5 Cir. 7/01/94), 641 So.2d 604, 607-608, writ denied, 94-2025 (La. 12/16/94), 648 So.2d 388. Thus, the trial court did not err in denying the motion for new trial on this basis.

Defendant also contends that the offenses of sexual battery and attempted sexual battery were not defined for the jury "as to Count One." Defendant did not object to the trial court's jury instructions. Thus, as discussed above, any error in this regard was not preserved for appeal. La. C.Cr.P. art. 841. Nevertheless, we note that the record reflects that the trial court properly instructed the jury regarding attempted sexual battery, sexual battery, and the additional elements necessary for the State to establish the crime of sexual battery of a juvenile under thirteen.

These assignments of error lack merit.

***Defendant's Sentencing***

Defendant contends that his sentences are excessive, that his prior record and the facts presented at trial do not justify the sentences imposed, and that he does not fall within the category of worst possible or most egregious offender of the crime of sexual battery.

The State responds that the sentences are not excessive, and that the trial court did not abuse its sentencing discretion, citing <u>State v. Aguilar-Benitez</u>, 21-174 (La. 10/12/21), 332 So.3d 618; <u>State v. Dixon</u>, 19-7 (La. App. 5 Cir. 12/30/19), 289 So.3d 170, <u>writ denied</u>, 20-143 (La. 7/17/20), 298 So.3d 176. The State asserts that the sentences are not excessive given that defendant committed multiple instances of abuse over a long period, and that defendant exploited a position of trust in order to abuse the victim repeatedly.

The Eighth Amendment of the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is excessive, even if it is within the statutory limits, if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. <u>State v. Hankton</u>, 20-388 (La. App. 5 Cir. 7/3/21), 325 So.3d 616, 623, <u>writ denied</u>, 21-01128 (La. 12/7/21), 328 So.3d 425. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. <u>Id.</u>

A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. <u>State v. Bell</u>, 21-599 (La. App. 5 Cir. 6/22/22), 343 So.3d 914, 923, <u>writ denied</u>, 22-1179 (La. 9/27/22), 347 So.3d 155. The only relevant question on appeal is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. <u>State v. Soraparu</u>, 97-1027 (La. 10/13/97), 703 So.2d 608.

Appellate courts consider three primary factors in evaluating whether a sentence is excessive: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. Bell, 343 So.3d at 923. Courts typically impose maximum sentences in cases involving the most serious violations of the offense charged and the worst type of offender. State v. Wilmot, 13-994 (La. App. 5 Cir. 05/14/14), 142 So.3d 141, 149.

Nature of the Crime

This court has recognized that a maximum or near maximum sentence for sexual battery of a minor may not be excessive if a defendant exploits a position of trust to commit the crime. Id. (citing State v. Badeaux, 01-406 (La. App. 5 Cir. 09/25/01), 798 So.2d 234, writ denied, 01-2965 (La. 10/14/02), 827 So.2d 414). At trial, the State presented evidence clearly establishing that a relationship of trust existed between defendant and the victim, and that defendant exploited this trust. Defendant is the victim's stepfather, and the biological father of her younger half-sister. He has lived with the family since approximately 2010. Both the victim and her brother indicated that they considered defendant to be a father figure.

The State also established that defendant continuously abused the victim over a period of ten years from the age of six to sixteen. He committed multiple acts of abuse at home while she was in her bed, in the car with her, and while other individuals were home. Defendant told the victim that if she told her mother, her mother would not love her. The victim testified that defendant first penetrated her at a very young age.

Nature and Background of the Offender

Defendant has no prior criminal convictions. Nonetheless, when sentencing, the trial court is not limited to considering only prior convictions and may review all evidence of prior criminal activity, including evidence of prior arrest records and of uncharged offenses or offenses that were *nolle prossed*. State v. Mason, 10-284 (La.

App. 5 Cir. 1/11/11), 59 So.3d 419, 429, <u>writ denied</u>, 11-306 (La. 6/24/11), 64 So.3d 216. The victim's testimony revealed repeated acts of sexual abuse inflicted upon her by defendant. In addition, defendant had no reservations about exploiting his position of trust in order to victimize her. Defendant also did not exhibit any remorse for his actions or the pain and suffering he caused the victim and the entire family.

<u>Sentences Imposed for Similar Crimes</u>

Jurisprudence indicates that Louisiana courts have imposed similar sentences for similar crimes and have upheld those sentences as constitutional.

1. Sexual Battery of a Juvenile under the Age of Thirteen

In <u>State v. Wilmot</u>, *supra*, the defendant received the maximum ninety-nine year sentence for a conviction of sexual battery of a juvenile under the age of thirteen. The evidence at trial established that the defendant was the mother's live-in boyfriend and that the sexual abuse of the victim began when the child was six-years old and continued over a period of six years. The victim displayed a clear trust for the defendant, whom she referred to as "daddy." According to the victim, the pattern of abuse began with touching and oral sex performed by the defendant, and as the victim got older, the abuse escalated to the point where the defendant engaged in two instances of vaginal sex and one instance of anal sex. Although it was the defendant's first conviction, on appeal, this court found the defendant's sentence was not an abuse of discretion, because the abuse lasted years, the victim looked up to the defendant as a father figure, and the actions of the defendant fractured the victim's family life. <u>Wilmot</u>, 142 So.3d at 149.

In <u>Aguliar-Benitez</u>, 332 So.3d at 621, the Louisiana Supreme Court reinstated a seventy-five-year sentence for sexual battery of a juvenile under thirteen stating that it did not find that the imposed punishment (1) made no measurable contribution to acceptable goals of punishment; (2) is nothing more than the purposeless imposition of pain and suffering; or (3) grossly out of proportion to the severity of

the crime, as required by the jurisprudence for a reviewing court to set aside a sentence as constitutionally excessive. The victim in Aguliar-Benitez, an eight year-old child, described repeated abuse.

In State v. Farrier, 14-623 (La. App. 4 Cir. 3/25/15), 162 So.3d 1233, the defendant was convicted of sexual battery on a six-year-old, unrelated child, who resided with him in the same house. The State established that the defendant touched the young girl's vaginal area, watched "nasty videos" with her, and imitated the conduct in those videos with the victim "in various states of undress." Id. at 1238. The evidence showed that the abuse occurred on a daily basis whenever the defendant and the victim were alone in the home. Id. The trial court sentenced defendant, a first-time offender, to seventy-five years imprisonment, twenty-five years of which were ordered to be served without the benefit of parole, probation, or suspension of sentence. On appeal, the appellate court affirmed the defendant's conviction and sentence. Id. at 1247.

Similarly, in State v. Odis, 14-534 (La. App. 1 Cir. 11/7/14), 2014 WL 5801507 (unpublished opinion), writ denied, 14-2524 (La. 9/18/15), 182 So.3d 21, the defendant was convicted of sexual battery upon a juvenile and sentenced to seventy-five years imprisonment at hard labor.[1] The defendant, who was the live-in boyfriend of the victim's mother, sexually abused the victim for a period of one-and-one-half years beginning when she was twelve-years old. Id. at 1-2. The victim testified that she would do everything he asked because she "was nervous and scared." Id. at 3.

As to defendant's sentence of ten years imprisonment at hard labor for sexual battery (count two), courts have upheld similar sentences.

---

[1] The trial court ordered that the first 25 years be served without the benefit of parole, probation, or suspension of sentence.

In Badeaux, 780 So.2d at 239, the trial court sentenced the defendant to ten years imprisonment at hard labor for sexual battery (count one) and seven years imprisonment at hard labor for indecent behavior with a juvenile (count two). In that case, the defendant put his finger in the eight-year-old victim's vagina and showed her nude pictures. This court found that the sentences were not excessive, reasoning that the defendant had established a relationship of trust with the victim by giving her candy, and then abused that relationship by molesting a vulnerable girl. Although the defendant had no prior felony convictions, he had been accused of molestation of his former stepdaughters. Id. at 239-40.

In State v. Hubb, 97-304 (La. App. 5 Cir. 9/30/97), 700 So.2d 1103, this court held that eight-year sentences were not constitutionally excessive for two defendants who had pled guilty to sexual battery and lived in the home with the ten and eleven-year-old female victims and their mother. The defendants had "french" kissed both of the children on several occasions, and one defendant had exposed his genitals to both children and forced one of the children to fondle him. The other defendant attempted to make one of the children fondle him and showed the other child photographs of nude women. Id. at 1104-05. Although one of the defendants had no criminal history, and the other had only misdemeanor offenses, the appellate court found, under the circumstances, the sentences imposed were not an abuse of the trial judge's discretion. Id. at 1106.

In this case, defendant was the victim's stepfather and the biological father to her younger half-sister, and the victim considered defendant to be a father figure. We find that defendant exploited his position of authority over the victim in order to commit the acts of sexual battery upon her, and that his actions have fractured the victim's family unit. Further, as in Wilmot, Farrier, and Odis, defendant's sexual abuse of the victim occurred over an extended period. We find that these cases support the seventy-five year sentence imposed upon defendant for his conviction of

sexual battery on a juvenile under the age of thirteen and, consequently, find no abuse of the trial court's vast sentencing discretion. We also find no abuse of discretion in the trial court's sentencing of defendant to ten years imprisonment at hard labor for sexual battery.

### *Evidence of Prior Bad Acts*

Defendant alleges that he learned the day of trial that the State intended to present evidence of new allegations of sexual abuse to the jury. One incident involved a first degree rape that occurred when defendant took the victim fishing. He asserts that the trial court should have granted a continuance as it was unreasonable to expect counsel to defend against the evidence without preparation or investigation. As a result, he seeks a new trial based on the admission of this evidence.

The State asserts that defendant was well aware of the allegation regarding the first degree rape as it was in the police report in the instant matter, which was provided to him in discovery early in the case. The State also contends that defendant failed to show any prejudice by the admission of the testimony at issue.

On May 20, 2022, with trial set for May 23, 2022, the State filed a notice of intent to introduce evidence under La. C.E. Article 412.2 or in the alternative 404 B. Therein, the State indicated that it intended to introduce evidence of other incidents of sexual abuse by defendant, including a fishing trip wherein defendant pinned the victim down in the backseat of a car, penetrated her with his penis, and ejaculated on her shorts. With regard to this notice, defendant filed a motion to exclude the State's notice of 412.2 and 404 B evidence or in the alternative a motion to continue trial. Prior to jury selection, the trial court granted defendant's motion, ordering that evidence of new incidents were excluded but allowed evidence of the fishing trip incident because it was provided in discovery.

The record indicates that defendant was aware of the allegation prior to the State's notice of intent. The State disclosed the allegations regarding the fishing trip incident in an incident report and in defendant's recorded interview from April 4, 2020, both of which were produced in discovery. The State also referred to this incident at the preliminary hearing.

Pursuant to La C.E. art. 412.2, evidence of a prior sexual offense is admissible if relevant and if the probative value of the evidence outweighs its prejudicial effect. State v. Lestrick, 13-289 (La. App. 5 Cir. 10/9/13), 128 So.3d 421, 435, writ denied, 13-2643 (La. 4/25/14), 138 So.3d 643. Appellate courts will not disturb a trial court's rulings on the admissibility of evidence absent an abuse of discretion. Id.

Considering that defendant had notice of the incident at issue and the discretion afforded the trial court in evidentiary rulings, we find no error in the trial court's admission of this evidence.

This assigned error lacks merit.

### The Return of the Verdict

Defendant alleges that the return of the jury verdict was improper because the trial judge instructed the jury to pick one of two guilty verdicts instead of re-reading all of the responsive verdicts, and the jury completed the verdict form in open court instead of being remanded to deliberate further.

In response, the State asserts that the return of the verdicts was not improper, and that regardless, defendant failed to preserve this issue for appellate review given that he did not contemporaneously object.

La. C.Cr.P. art. 813 states as follows:

> If the court finds that the verdict is incorrect in form or is not responsive to the indictment, it shall refuse to receive it, and shall remand the jury with the necessary oral instructions. In such a case the court shall read the verdict, and record the reasons for refusal.

The record reflects that when the jury initially submitted the verdict forms to the trial court, it had indicated on the forms that the jury found defendant "guilty" without specifying of which offense. Because the jury did not specify on the verdict form the offense of which it found defendant guilty, the verdict was incorrect in form. As a result, the trial court provided the jury with new verdict forms and instructed them to go back and redo it, instructing them to select a verdict for each offense. The trial court directed the jury to choose one of the verdicts, and referred them to the verdict choices on the back of the verdict form. The jury had already indicated it found defendant guilty. The record reflects that the jury exited the courtroom to complete the new verdict form and then returned for the reading of the verdict. No objection was made to the return of the jury verdict.

Considering defendant failed to timely object to the procedures involving the jury verdict and the foregoing, we find no error in the jury verdict. This assignment of error lacks merit.

**ERRORS PATENT**

We have reviewed the record for errors patent in accordance with La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir. 1990). The record reflects the following errors patent.

First, the trial court did not inform defendant of the sex offender registration requirements in accordance with La. R.S. 15:540, *et seq.* Because defendant's convictions are defined as sex offenses under La. R.S. 15:541(24), the trial court was required to give defendant in written notification of the sex offender registration requirements. State v. Anthony, 17-372 (La. App. 5 Cir. 12/30/20), 309 So.3d 912, 930, writ denied, 21-176 (La. 10/12/21), 325 So.3d 1067, cert. denied, — U.S. —, 143 S.Ct. 29, 214 L.Ed.2d 214 (2022).

Failure to provide this notification, even where a defendant received a life sentence, is an error patent warranting remand for written notification. Anthony,

309 So.3d at 930.  Therefore, we remand the matter and order the trial court to inform defendant of the registration requirements of La. R.S. 15:542 by sending appropriate written notice to him within ten days of the rendition of this opinion and to file written proof in the record that defendant received the notice.  See State v. Starr, 08-341 (La. App. 5 Cir. 11/25/08), 2 So.3d 451, 460-61, writ denied, 08-2991 (La. 9/18/09), 17 So.3d 384.

Second, the Uniform Commitment Order ("UCO") states that count one occurred on April 1, 2009, and that count two occurred on April 1, 2016.  The record, however, indicates that count one occurred between April 1, 2009, and March 31, 2016, and that count two occurred between April 1, 2016, and April 1, 2020.  Accordingly, we remand this matter for correction of the UCO to reflect the correct offense date ranges and direct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected UCO to the appropriate authorities in accordance with La. C.Cr.P. art. 892 B(2) and the Department of Corrections' legal department.  See, Anthony, *supra*.

Third, the sentencing minute entry designates defendant's conviction on count two as a crime of violence but not count one.  La. C.Cr.P. art. 890.3 C designates that certain crimes "shall always be designated by the court in the minutes as crimes of violence," including "sexual battery."  Therefore, both of defendant's convictions must be designated as crimes of violence in the trial court minutes.  Accordingly, we remand this matter for correction of the sentencing minute entry to designate both convictions as crimes of violence.  See Anthony, 309 So.3d at 931.

Lastly, when the trial court does not inform the defendant of the time period for seeking post-conviction relief, the appellate court may inform the defendant of the applicable time limitation for post-conviction relief by means of its opinion.  State v. Becnel, 18-549 (La. App. 5 Cir. 2/6/19), 265 So.3d 1017, 1022.  Thus, by way of this opinion, we advise defendant that no application for post-conviction

relief, including applications that seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 930.8, and 914 or 922.

**DECREE**

For the reasons stated, we affirm defendant's convictions and sentences and remand this matter with instructions.

<u>**AFFIRMED; REMANDED WITH INSTRUCTIONS**</u>

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
CORNELIUS E. REGAN, PRO TEM

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**AUGUST 9, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT
REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-KA-468

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE FRANK A. BRINDISI (DISTRICT JUDGE)
JULIET L. CLARK (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          GWENDOLYN K. BROWN (APPELLANT)
KEVIN V. BOSHEA (APPELLANT)

### MAILED
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053